# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REBECCA KELLY SLAUGHTER, in her official and personal capacities,<br>　　c/o Counsel<br>　　2020 Pennsylvania Ave. NW, Suite # 163<br>　　Washington D.C. 20006,<br><br>　　and<br><br>ALVARO M. BEDOYA, in his official and personal capacities,<br>　　c/o Counsel<br>　　2020 Pennsylvania Ave. NW, Suite # 163<br>　　Washington D.C. 20006,<br><br>　　　　　　　　　　　　*Plaintiffs,*<br><br>　　　　　　　v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States,<br>　　1600 Pennsylvania Avenue NW<br>　　Washington, D.C. 20500,<br><br>ANDREW N. FERGUSON, in his official capacity as Chair of the Federal Trade Commission,<br>　　600 Pennsylvania Avenue NW<br>　　Washington, D.C. 20580,<br><br>MELISSA HOLYOAK, in her official capacity as Commissioner of the Federal Trade Commission,<br>　　600 Pennsylvania Avenue NW<br>　　Washington, D.C. 20580,<br><br>　　and<br><br>DAVID B. ROBBINS, in his official capacity as the Executive Director of the Federal Trade Commission,<br>　　600 Pennsylvania Avenue NW<br>　　Washington, D.C. 20580,<br><br>　　　　　　　　　　　　*Defendants.* | Case No. _____<br><br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

## INTRODUCTION

Plaintiffs Rebecca Kelly Slaughter and Alvaro M. Bedoya are Commissioners of the Federal Trade Commission. Last week, President Donald Trump purported to fire them, in direct violation of a century of federal law and Supreme Court precedent. Plaintiffs will not and do not accept this unlawful action: Plaintiffs bring this action to vindicate their right to serve the remainder of their respective terms, to defend the integrity of the Commission, and to continue their work for the American people.

Nearly 111 years ago, Congress created the Federal Trade Commission (FTC), a bipartisan federal agency whose mission is to combat unfair, deceptive, and anti-competitive business practices. To ensure the quality and fairness of the agency's decision-making, the FTC Act provides that no more than three of the FTC's five Commissioners can be of the same political party, that Commissioners serve staggered seven-year terms, and that a Commissioner can only be "removed by the President for inefficiency, neglect of duty, or malfeasance in office." 15 U.S.C. § 41. These tenure protections echo those Congress granted to the members of the Interstate Commerce Commission (ICC) in 1887, which, in turn, drew on a long history— dating back to the Founding era and before—of government officials, board members, commissioners, and other agents who enjoyed protection from at-will removal by the executive.

Ninety years ago, in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), the Supreme Court unanimously affirmed the constitutionality of the statutory tenure protections granted to FTC Commissioners and held that the President could not remove such Commissioners at will. Removal protections like those for FTC Commissioners appear in statutes for myriad agencies, notably including the Federal Reserve. Congress has continually relied on *Humphrey's Executor*, and the Supreme Court has repeatedly refused to upset this

landmark precedent. As *Humphrey's Executor* recognized, providing some protection from removal at the President's whim is essential to ensuring that agency officials can exercise their own judgment: "[I]t is quite evident that one who holds his office only during the pleasure of another cannot be depended upon to maintain an attitude of independence against the latter's will." *Id.* at 629.

In short, it is bedrock, binding precedent that a President cannot remove an FTC Commissioner without cause. And yet that is precisely what has happened here: President Trump has purported to terminate Plaintiffs as FTC Commissioners, not because they were inefficient, neglectful of their duties, or engaged in malfeasance, but simply because their "continued service on the FTC is" supposedly "inconsistent with [his] Administration's priorities."

The President's action is indefensible under governing law. This Court should declare the President's attempted removals unlawful and ineffective; permanently enjoin the FTC Chairman, Commissioner Holyoak, and the FTC Executive Director from taking any action that would prevent Plaintiffs from fulfilling their duties as Commissioners and serving out the remainder of their terms; and grant any other relief this Court deems proper.

## JURISDICTION AND VENUE

1.      This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1361, 1651, 2201, and 2202.

2.      Venue is proper in this district under 28 U.S.C. § 1391(e).

## PARTIES

3.      Plaintiff Rebecca Kelly Slaughter is a Commissioner of the FTC. She was nominated to serve as a Democratic Commissioner by President Donald Trump, was duly

confirmed by the U.S. Senate in 2018, and was re-nominated by President Joe Biden and re-confirmed by the Senate in 2024.  Her appointment carries a seven-year term that expires on September 25th, 2029.

4.      Plaintiff Alvaro M. Bedoya is a Commissioner of the FTC.  He was nominated by President Joe Biden to serve as a Democratic Commissioner, and he was duly confirmed by the U.S. Senate to a seven-year term that expires on September 25th, 2026.

5.      Defendant Donald J. Trump is the President of the United States.  He is sued in his official capacity.

6.      Defendant Andrew N. Ferguson is the Chairman of the Federal Trade Commission.  He is sued in his official capacity.

7.      Defendant Melissa Holyoak is a Commissioner of the Federal Trade Commission.  She is sued in her official capacity.

8.      Defendant David B. Robbins is the Executive Director of the Federal Trade Commission.  He is sued in his official capacity.

## STATUTORY BACKGROUND

9.      Congress created the Federal Trade Commission in 1914.  The FTC Act was the culmination of a series of reform efforts aimed at curtailing the trust crisis of the late-nineteenth and early-twentieth centuries—a period now remembered as the Gilded Age and known for dominating monopolies like Standard Oil, U.S. Steel, and the Beef Trust.

10.      Congress's efforts at curtailing corporate consolidation began with the Sherman Antitrust Act of 1890, which outlaws "every contract, combination, or conspiracy in restraint of trade," and any attempts to "monopolize" or "conspirac[ies] or combination[s] to monopolize."

15 U.S.C. § 1, 2.  That effort largely failed, however, as mergers continued, and trusts grew more powerful.

11.    In 1903, Congress created the Bureau of Corporations, an investigatory agency that reported on abuses of monopoly power.  This, too, proved insufficient, particularly after the Supreme Court's decision in *Standard Oil Co. of New Jersey v. United States*, 221 U.S. 1 (1911), curtailed the reach of the Sherman Act.

12.    In 1914, Congress passed, and President Woodrow Wilson signed, the Clayton Act and the FTC Act, which created the Federal Trade Commission and into which the former Bureau of Corporations was merged.  The Sherman Act, Clayton Act, and FTC Act still make up the core of federal antitrust law today.

13.    In the FTC Act, the Commission was "empowered and directed to prevent persons, partnerships, or corporations, except banks, and common carriers . . . from using unfair methods of competition in commerce."  Pub. L. No. 63-203, ch. 311, § 5, 38 Stat. 717, 719 (1914).  To do so, when it had "reason to believe" a corporation was "using any unfair method of competition in commerce," it was empowered to issue "a complaint stating its charges" and giving notice of a hearing, *id.*; it could hold a hearing with a written record, *id.*; and after such a hearing, issue a report with a cease and desist order, *id.* at 38 Stat. 719-20.  Such an order could then be enforced in the federal Courts of Appeals.  *Id.* at 38 Stat. 720.  The Commission's findings of fact, if supported by testimony, would be deemed conclusive.  *Id.* at 38 Stat. 721. The FTC Act also authorized the Commission to perform investigations into business practices and issue subpoenas.  *Id.* § 9, 38 Stat. 722; *see also id.* § 6(b), 38 Stat. 721. Congress also licensed the Commission to assist courts in drafting decrees for antitrust cases, *id.* § 7, 38 Stat.

722, and to help the Attorney General assure compliance with antitrust orders by performing

investigations and reporting findings, *id.* § 6(c), 38 Stat 721.

14.     The composition of the Commission's membership was a key feature in

Congress's design.  Then, as now, the FTC Act provided that the FTC "shall be composed of five

Commissioners, who shall be appointed by the President, by and with the advice and consent of

the Senate . . . for terms of seven years," and that Commissioners are removable by the President

only for "inefficiency, neglect of duty, or malfeasance in office."  15 U.S.C. § 41.  As the Senate

Report for the FTC Act explained, this arrangement would give the Commission "greater

prestige and independence, and its decisions, coming from a board of several persons, will be

more readily accepted as impartial and well considered."  S. Rep. No. 63-597 at 11 (1914).  The

Senate Report continued that "it is essential that [the Commission] should not be open to the

suspicion of partisan direction," and thus no more than three members of the Commission may

be of the same party, *id.*, a restriction that remains today, 15 U.S.C. § 41.

15.     Agencies such as the FTC—led by commissioners with protection from at-will

removal by the President—have existed since the earliest days of the Constitution.  To take the

most cited example, the Sinking Fund Commission, proposed by Alexander Hamilton, passed by

the First Congress, signed into law by President Washington, exercised significant authority and

was composed of Commissioners, several of whom the President had no ability to dismiss.

Sinking Fund Act of Aug. 12, 1790, ch. 47, §§ 1-4, 1 Stat. 186, 187.  But this is hardly the only

example: early Congresses established numerous commissions and boards and created various

offices that enjoyed similar independence.

16.     Likewise, the notion that legislatures have the power to create certain offices with

"term of years" tenure, from which an officeholder cannot be terminated by the executive at will,

was well-settled before, during, and long after the Founding. Indeed, that principle is the subject

of extensive discussion in *Marbury v. Madison*, 5 U.S. 137 (1803), in which Chief Justice

Marshall explains that, if Mr. Marbury properly received his commission appointing him to a

five-year term as a justice of the peace, he "has, to [his] commission, a vested legal right, of

which the executive cannot deprive him. He has been appointed to an office, from which he is

not removable, at the will of the executive . . . ." *Id.* at 172.

17.    In the nineteenth century, state legislatures and Congress built on this tradition in

establishing, most notably, commissions to regulate the railroads, culminating in the

establishment of the Interstate Commerce Commission in 1887, whose five members—similar to

the FTC's Commissioners—were appointed to terms of six years, and could be removed by the

President only for inefficiency, neglect of duty, or malfeasance. *See* An Act to Regulate

Commerce, ch. 104, § 11, 24 Stat. 379, 383 (1887).

18.    The FTC opened its doors in 1915 and in its first decade "moved forward to apply

the range of policymaking tools Congress provided," including by "rel[ying] heavily on litigation

under the FTC and Clayton Acts" along with "public hearings, investigations, and reports."[1]

19.    In 1925, William Humphrey joined the Commission, and, in 1931, he was re-

appointed for a second seven-year term. Humphrey was a controversial Commissioner, who

"reveled in personal and political attacks" that he directed at his colleagues on the Commission,

including by denouncing "'pink' politicians who used the FTC to 'persecute honest business.'"[2]

Under Humphrey's partisan approach, the Commission dismissed twenty pending consumer

protection cases and fifty-five competition cases in his first eighteen months, with detailed

---

[1] Marc Winerman and William E. Kovacic, *The William Humphrey and Abram Myers Years, The FTC from 1925 to 1929*, 77 Antitrust L.J. No. 3, 701, 707 (2011).
[2] *Id.* at 711.

dissents from other Commissioners.[3]  Still, Humphrey's tenure saw the FTC take on several prominent enforcement actions, including, in 1925, charging the Aluminum Company with antitrust violations (in a high profile break with the Department of Justice);[4] in 1927, instigating investigations into DuPont, General Motors, and U.S. Steel;[5] and in 1928, enforcing an antitrust order against a motion picture industry consolidation.[6]

20.     Shortly after President Franklin D. Roosevelt came into office, he asked Humphrey for his resignation, explaining that "the aims and purposes of the Administration with respect to the work of the Commission [could] be carried out most effectively with personnel of my own selection." *Humphrey's Executor*, 295 U.S. 602, 618 (1935).  President Roosevelt then wrote Humphrey again to ask for his resignation, reiterating that "I do not feel that your mind and my mind go along together on either the policies or the administering of the [FTC]," but Humphrey declined.  *Id.* at 619.  President Roosevelt then wrote Humphrey a final letter, stating: "Effective as of this date you are hereby removed from the office of Commissioner of the Federal Trade Commission."  *Id.*

21.     Humphrey "never acquiesced in this action," but died several months later.  *Id.* His executor ultimately challenged his termination, however, presenting to the Supreme Court the "question[] . . . of the power of the President to make the removal."  *Id.*

22.     In the resulting decision, *Humphrey's Executor v. United States*, a unanimous Supreme Court held that President Roosevelt's attempted removal was unlawful, and affirmed that, "as to officers of the kind here under consideration," *i.e.*, Commissioners of the FTC, "we

---

[3] *Id.* at 715.
[4] *Id.* at 716-17.
[5] *Id.* at 723.
[6] *Id.* at 726-27.

hold that no removal can be made during the prescribed term for which the officer is appointed, except for one or more of the causes named in the applicable statute." *Id.* at 632.

23.     Despite repeated challenges, *Humphrey's Executor* has stood for ninety years and remains binding law. *See, e.g.*, *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 228 (2020) ("[W]e do not revisit *Humphrey's Executor* or any other precedent today . . . ."); *Morrison v. Olson*, 487 U.S. 654, 724-25 (1988) ("Since our 1935 decision in *Humphrey's Executor* . . . removal restrictions have been generally regarded as lawful for so-called 'independent regulatory agencies,' such as the Federal Trade Commission . . . .") (Scalia, J., dissenting); *Wiener v. United States*, 357 U.S. 349, 356 (1958) (endorsing "[t]he philosophy of *Humphrey's Executor*, in its explicit language as well as its implications"); *Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 91 F.4th 342, 356 (5th Cir.), *cert. denied*, 145 S. Ct. 414 (2024) ("[H]ere, *Humphrey's* does settle the question [of the constitutionality of removal restrictions]. Only the Supreme Court has power to reconsider that New Deal-era precedent—perhaps reaffirming it, overruling it, or narrowing it—and at least so far, it hasn't."); *FTC v. Precision Patient Outcomes, Inc.*, No. 22-CV-07307-VC, 2023 WL 3242835, at *1 (N.D. Cal. May 3, 2023) (arguments that FTC removal restrictions are unconstitutional "clearly foreclosed by Supreme Court precedent").

24.     Both before and after *Humphrey's Executor*, Congress has created numerous agencies, boards, and commissions whose members are protected from at-will removal—the Federal Reserve, the Postal Service, the National Transportation Safety Board (NTSB), the National Labor Relations Board (NLRB), and the Federal Energy Regulatory Commission (FERC), among others.

## **FACTUAL BACKGROUND**

25.     President Trump nominated Plaintiff Rebecca Kelly Slaughter, a Democrat, to be

FTC Commissioner in 2018.  Commissioner Slaughter was confirmed by the Senate and sworn

in on May 2, 2018.  President Biden renominated Ms. Slaughter on February 13th, 2023.  The

Senate confirmed her again—in a bipartisan slate that included two Republican Commissioners,

Defendants Ferguson and Holyoak—on March 7th, 2024, for a term set to expire on September

25th, 2029.

26.     President Biden nominated Plaintiff Alvaro M. Bedoya, a Democrat, to serve as

FTC Commissioner in September 2021.  The Senate confirmed his nomination on May 11, 2022,

and he was sworn in on May 16, 2022, to a term that expires on September 25th, 2026.

27.     President Biden nominated Defendant Andrew Ferguson, a Republican, to serve

as FTC Commissioner on July 11, 2023.  While the Senate was considering his nomination,

Defendant Ferguson answered questions from the Senate Committee on Commerce, Science, and

Transportation about, among other things, *Humphrey's Executor* and the independence of the

FTC.  He explained:

> If confirmed as an FTC Commissioner, I will abide by binding Supreme Court precedent.
> The Supreme Court has held that the FTC's removal provisions are consistent with
> Article II of the Constitution.  Although subsequent decisions have drawn *Humphrey's
> Executor* into question, the Supreme Court has instructed time and again that "it is [the
> Supreme] Court's prerogative alone to overrule one of its precedents."  The Supreme
> Court's "decisions remain binding precedent until [it] see[s] fit to reconsider them,
> regardless of whether subsequent cases have raised doubts about their continuing
> validity."[7]

28.     President Trump appointed Mr. Ferguson Chair of the FTC effective January 20,

2025, the date of President Trump's inauguration.

---

[7] *Democratic Questions for the Record*, S. Comm. on Com., Sci., and Transp. (2023) (statement
of Andrew Ferguson).

29.     In 1950, the FTC Act was amended to give the President the power to appoint the FTC's Chair from among its members.  Reorganization Plan No. 8 of 1950, 15 Fed. Reg. 3175 (May 25, 1950).  The Chair is the "executive and administrative head of the agency."  16 C.F.R. § 0.8.  As such, the Chair controls the agency's expenditures and selects the heads of its major policymaking divisions.  *Id.*

30.     The Chair is also empowered to direct the Executive Director of the FTC.  16 C.F.R. § 0.10.  Since 2013, Defendant Robbins has served in that role.  As Executive Director, Mr. Robbins is the chief operating officer of the FTC, tasked with managing the Commission's facilities, finances, administrative services, information technology, and human resources.  *Id.*

31.     During the tenure of Commissioners Slaughter and Bedoya, the FTC has regulated some of the nation's largest corporations, including those with other business with the federal government.  For example:

    a.  In May 2021, the FTC issued a report to Congress detailing how repair restrictions imposed by manufacturers hurt small businesses and consumers.[8]

    b.  On May 31, 2023, the FTC charged Amazon with violating the Children's Online Privacy Protection Act Rule by keeping Alexa voice recordings in perpetuity and ignoring parents' deletion requests.[9]  The Commission ordered Amazon to delete the children's data and implement new privacy safeguards.[10]

---

[8] Fed Trade Comm'n, Nixing the Fix: An FTC Report to Congress on Repair Restrictions (2021), https://www.ftc.gov/system/files/documents/reports/nixing-fix-ftc-report-congress-repair-restrictions/nixing_the_fix_report_final_5521_630pm-508_002.pdf.
[9] *FTC and DOJ Charge Amazon with Violating Children's Privacy Law by Keeping Kids' Alexa Voice Recordings Forever and Undermining Parents' Deletion Requests*, Fed. Trade Comm'n (May 31, 2023), https://www.ftc.gov/news-events/news/press-releases/2023/05/ftc-doj-charge-amazon-violating-childrens-privacy-law-keeping-kids-alexa-voice-recordings-forever.
[10] *Id.*

c. On December 18, 2023, Illumina, Inc. and Grail, Inc. abandoned their planned merger following a decision from the U.S. Court of Appeals for the Fifth Circuit supporting the FTC's determination that the proposed merger was anticompetitive and threatened the market for cancer detection tests.[11]

d. On July 9, 2024, the FTC issued a staff report detailing how the six largest pharmacy benefit managers (PBMs) artificially boosted their profits by systematically steering customers to PBM-affiliated pharmacies and higher priced drugs.[12] On September 20, 2024, the FTC filed an administrative complaint against Caremark, Express Scripts, and Optum, the three largest PBMs, who together administer about 80% of all prescriptions in the United States.[13] That case is still pending. On January 14, 2025, the FTC issued another staff report detailing how the three major PBMs charge markups for medications treating cancer, HIV, and other critical diseases.[14]

e. On September 19, 2024, the FTC issued a report detailing how some of the largest social media and streaming companies have surveilled consumers, monetizing the personal information of their users, especially children and teenagers.[15] The

---

[11] *Statement Regarding Illumina's Decision to Divest Grail*, Fed. Trade Comm'n (Dec. 18, 2023), https://www.ftc.gov/news-events/news/press-releases/2023/12/statement-regarding-illuminas-decision-divest-grail.

[12] *FTC Releases Interim Staff Report on Prescription Drug Middlemen*, Fed. Trade Comm'n (July 9, 2024), https://www.ftc.gov/news-events/news/press-releases/2024/07/ftc-releases-interim-staff-report-prescription-drug-middlemen.

[13] *FTC Sues Prescription Drug Middlemen for Artificially Inflating Insulin Drug Prices*, Fed. Trade Comm'n (Sept. 20, 2024), https://www.ftc.gov/news-events/news/press-releases/2024/09/ftc-sues-prescription-drug-middlemen-artificially-inflating-insulin-drug-prices.

[14] *FTC Releases Second Interim Staff Report on Prescription Drug Middlemen*, Fed. Trade Comm'n (Jan. 14, 2025), https://www.ftc.gov/news-events/news/press-releases/2025/01/ftc-releases-second-interim-staff-report-prescription-drug-middlemen.

[15] *FTC Staff Report Finds Large Social Media and Video Streaming Companies Have Engaged in Vast Surveillance of Users with Lax Privacy Controls and Inadequate Safeguards for Kids and*

report included information on, among others, Amazon.com, Inc.; ByteDance Ltd., which owns TikTok; Discord Inc.; Meta Platforms, Inc.; YouTube LLC; and X Corp.[16]

f.   On September 24, 2024, the FTC reached a settlement with Invitation Homes, the nation's largest landlord of single-family homes, in which the company agreed to turn over $48 million to refund consumers harmed by its deceptive practices—including hidden fees, withheld security deposits, and misleading people about eviction policies during the pandemic.[17]

g.   On October 25, 2024, the FTC reached a proposed settlement with Lyft arising from the rideshare companies' use of misleading claims about earnings to lure new drivers.[18]

h.   On December 10, 2024, the FTC obtained a preliminary injunction from the U.S. District Court for the District of Oregon preventing a merger between Kroger Company and Albertsons Companies, Inc.  This would have been the largest supermarket merger in U.S. history, resulting in higher prices on everyday grocery staples for millions of Americans.[19]

---

*Teens*, Fed. Trade Comm'n (Sept. 19, 2024), https://www.ftc.gov/news-events/news/press-releases/2024/09/ftc-staff-report-finds-large-social-media-video-streaming-companies-have-engaged-vast-surveillance.

[16] *Id.*

[17] *FTC Takes Action Against Invitation Homes for Deceiving Renters, Charging Junk Fees, Withholding Security Deposits, and Employing Unfair Eviction Practices*, Fed. Trade Comm'n (Sept. 24, 2024), https://www.ftc.gov/news-events/news/press-releases/2024/09/ftc-takes-action-against-invitation-homes-deceiving-renters-charging-junk-fees-withholding-security.

[18] *FTC Takes Action to Stop Lyft from Deceiving Drivers with Misleading Earnings Claims*, Fed. Trade Comm'n (Oct. 25, 2024), https://www.ftc.gov/news-events/news/press-releases/2024/10/ftc-takes-action-stop-lyft-deceiving-drivers-misleading-earnings-claims.

[19] *Statement on FTC Victory Securing Halt to Kroger, Albertsons Grocery Merger*, Fed. Trade Comm'n  (Dec. 10, 2024), https://www.ftc.gov/news-events/news/press-releases/2024/12/statement-ftc-victory-securing-halt-kroger-albertsons-grocery-merger.

     i.    In April, the FTC is scheduled to go to trial against Meta Platforms, Inc., in a suit that alleges Meta accumulated and maintained illegal monopoly power over social networking through its acquisitions of Instagram and WhatsApp.[20]

32.    On March 17, 2025, Defendant Ferguson appeared on the Bloomberg.com podcast *Odd Lots*, and commented on the "benefits in certain circumstances to having multi-member agencies with people from both parties."  He continued:

> I mean, look, if you have an agency that is exceeding the law, abusing the companies that it purports to regulate, it's helpful for markets, for Courts, for litigants, for government transparency, to have people on the other party pointing this out and saying it in dissents.  You know, I wrote 400 plus pages of dissents during my time as a minority commissioner, I think that that adds value.[21]

33.    The following day, on March 18, Plaintiffs Slaughter and Bedoya each received an email message from Trent Morse, Deputy Director of Presidential Personnel.  That email included a message from President Trump: "I am writing to inform you that you have been removed from the Federal Trade Commission, effective immediately."  (*See* Ex. A.)

34.    President Trump's message did not identify any "inefficiency, neglect of duty, or malfeasance in office" to support Plaintiffs' removal, as the FTC Act requires.  Instead, tracking nearly word-for-word President Roosevelt's message to Humphrey, President Trump's message simply asserted: "Your continued service on the FTC is inconsistent with my Administration's priorities.  Accordingly, I am removing you from office pursuant to my authority under Article II of the Constitution."  (*Id.*)

35.    The President's message briefly acknowledged *Humphrey's Executor* but asserted that it "does not fit the principal officers who head the FTC today" because, "[a]s presently

---

[20] *See FTC v. Meta Platforms, Inc.*, 1:20-cv-03590-JEB (D.D.C. filed Dec. 09, 2020).
[21] Odd Lots, *FTC Chief Andrew Ferguson on the Trump Vision for Antitrust*, Bloomberg (Mar. 17, 2024), https://www.bloomberg.com/news/audio/2025-03-17/ftc-chair-andrew-ferguson-on-maga-antitrust.

constituted, the FTC exercises substantial executive power." (*Id.*) After listing certain of the FTC's powers, the message stated: "An independent agency of this kind has 'no basis in history and no place in our constitutional structure,'" citing "Seila Law, 591 U.S. at 220; see id. at 222 & n.8."

36.    The message does not acknowledge, however, that the quoted passage from *Seila Law* referred to "an independent agency *led by a single Director* and vested with significant executive power," 591 U.S. at 220 (emphasis added), and followed an extensive discussion of the ways in which the agency at issue in that case, the CFPB, differs from the FTC, *see id.* at 218-19. Nor did the message acknowledge that *Seila Law* expressly declined to "revisit" *Humphrey's Executor, id.* at 228, and, to the contrary, even suggested that Congress could "convert[] the CFPB into a multimember agency" to remedy the constitutional issue identified in that case, *i.e.*, by making the CFPB more like the FTC, *id.* at 237.

37.    Shortly after the message that purported to fire them, Plaintiffs Slaughter and Bedoya were cut off from their FTC email addresses and asked to return their technology equipment. They have been denied access to their offices, their staff have all been placed on administrative leave, and they are now listed as "Former Commissioners" on the FTC website. As a result of these actions, Plaintiffs Slaughter and Bedoya have been unable to fulfill their duties as Senate-confirmed FTC Commissioners.

38.    Since Plaintiffs' purported firing, only two FTC Commissioners have been able to perform their duties—Republican Commissioners Ferguson and Holyoak. President Trump has also nominated a third Republican to serve as Commissioner, Mark Meador. The Senate is still considering that nomination.

## CLAIMS FOR RELIEF

### COUNT ONE
### VIOLATION OF THE FEDERAL TRADE COMMISSION ACT, 15 U.S.C. § 41

39.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 to 38 as if fully set forth herein.

40.    Plaintiffs have a statutory right to remain in office.  Once confirmed by the Senate, the FTC Act entitles Commissioners to serve the remainder of the seven-year term to which they are appointed, unless they are removed "for inefficiency, neglect of duty, or malfeasance in office." 15 U.S.C. § 41.

41.    The President did not terminate Plaintiffs based on a finding of "inefficiency, neglect of duty, or malfeasance in office."

42.    Instead, the President purported to remove Plaintiffs solely because their "service on the FTC is inconsistent with [his] Administration's priorities."  This ground for removal is not permitted by the statute, as confirmed by *Humphrey's Executor v. United States*, 295 U.S. 602, 632 (1935) ("[W]e hold that no removal can be made during the prescribed term for which the [FTC Commissioner] is appointed, except for one or more of the causes named in the applicable statute.").

43.    As a result, the President's termination of Commissioners Slaughter and Bedoya is *ultra vires* and a clear violation of law.

### COUNT TWO
### ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706

44.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 to 43 as if fully set forth herein.

45.     President Trump may not remove Commissioners Slaughter and Bedoya without a finding of "inefficiency, neglect of duty, or malfeasance in office." 15 U.S.C. § 41. As there was no such finding here, their purported termination is unlawful, and all actions taken by Defendants Ferguson, Holyoak, and Robbins to carry out that firing are "not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," and "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2). These actions include barring Commissioners Slaughter and Bedoya from the office, cutting off their access to technology systems, revoking technology equipment, placing their staff on administrative leave, and otherwise failing to recognize their status as active Commissioners.

46.     Commissioners Slaughter and Bedoya seek to have such actions set aside, pursuant to section 706 of the Administrative Procedure Act, and to compel agency action unlawfully withheld or unreasonably delayed.

## COUNT THREE
## DECLARATORY JUDGMENT ACT, 28 U.S.C. §§ 2201 and 2202

47.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 to 46 as if fully set forth herein.

48.     Commissioners Slaughter and Bedoya are entitled to declaratory relief on the basis of all claims identified.

49.     There is a substantial and ongoing controversy between Plaintiffs and Defendants, and a declaration of rights under the Declaratory Judgment Act is both necessary and appropriate to establish and affirm that Ms. Slaughter and Mr. Bedoya are Commissioners of the FTC and that the President does not have authority to remove them absent a finding inefficiency, neglect of duty, or malfeasance in office.

## COUNT FOUR
## VIOLATION OF THE SEPARATION OF POWERS

50.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 to 49 as if fully set forth herein.

51.    President Trump's purported removal of Commissioners Slaughter and Bedoya is invalid because it violates Article I, Section 8 and Article II, Sections 2 and 3 of the U.S. Constitution.  The Constitution empowers Congress to set reasonable limitations on the removal of the heads of independent agencies and it does not confer on the President an authority to disregard Congress's scheme.  The President's purported removal of Commissioners Slaughter and Bedoya violates the powers vested in Congress by the Constitution and further violates the President's duty to "take Care that the Laws be faithfully executed."

## COUNT FIVE
## WRIT OF MANDAMUS

52.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 to 51 as if fully set forth herein.

53.    In the alternative, Commissioners Bedoya and Slaughter are entitled to a writ of mandamus.  The FTC Act's removal restrictions impose a ministerial duty on the President and subordinate officials not to interfere with Commissioners' tenure in office absent cause for inefficiency, neglect of duty, or malfeasance in office.  *See Swan v. Clinton*, 100 F.3d 973, 977-78 (D.C. Cir. 1996).

54.    Commissioners Slaughter and Bedoya are entitled to a writ of mandamus prohibiting their removal from office and, absent this Court granting one of the counts identified above, there is no other adequate means of redress.

## COUNT SIX
## EQUITABLE RELIEF FOR STATUTORY AND CONSTITUTIONAL VIOLATIONS

55.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 to 54 as if fully set forth herein.

56.    Under this Court's traditional equitable jurisdiction, the Plaintiffs are entitled to equitable relief to prevent and restrain ongoing violations of both statutory and constitutional federal law by Defendants.  Equitable actions have "long been recognized as the proper means" to prevent public officials from acting unconstitutionally.  *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n. 2 (2010) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001)).  Because such actions seek simply to halt or prevent a violation of federal law rather than the award of money damages, they do not ask the Court to imply a new cause of action.  To the contrary, the ability to sue to enjoin unlawful and unconstitutional actions by federal officers is the creation of courts of equity and reflects a long history of judicial review of illegal executive action, tracing back to England.  *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326-27 (2015).

## PRAYER FOR RELIEF

Commissioners Slaughter and Bedoya request that the Court:

      a.    Declare the President's purported termination of Plaintiffs Slaughter and Bedoya unlawful and that Plaintiffs Slaughter and Bedoya are Commissioners of the Federal Trade Commission;

      b.    Declare that Commissioners of the Federal Trade Commission may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office;

    c.   Enter an injunction against Defendants Ferguson, Holyoak, and Robbins, ordering that they treat Plaintiffs as FTC Commissioners, including by permitting them access to their office, staff, electronic devices, receive all wages and other benefits and resources of their office, and that these Defendants take no further actions to obstruct Plaintiffs carrying out their duties as Commissioners;

    d.   Award all other appropriate relief.

Dated: March 27, 2025

Respectfully submitted,

THE PROTECT DEMOCRACY PROJECT, INC.

By: */s/ Benjamin L. Berwick*
Benjamin L. Berwick (D.D.C. Bar No. MA0004)
15 Main Street, Suite 312
Watertown, MA 02472
Tel.: (202) 579-4582
ben.berwick@protectdemocracy.org

Amit Agarwal (D.C. Bar No. 90002013)*
Beau Tremitiere*
2020 Pennsylvania Ave. NW, Suite # 163
Washington DC 20006
Tel.: (202) 579-4582
amit.agarwal@protectdemocracy.org
beau.tremitiere@protectdemocracy.org

Jared F. Davidson*
3014 Dauphine Street, Suite J
New Orleans, LA 70117
Tel.: (202) 579-4582
jared.davidson@protectdemocracy.org

CLARICK GUERON REISBAUM LLP

Aaron Crowell*
Gregory A. Clarick*
David Kimball-Stanley*
41 Madison Avenue, 23rd Floor
New York, NY 10010
Tel.: (212) 633-4310
acrowell@cgr-law.com
gclarick@cgr-law.com
dkimballstanley@cgr-law.com

*Attorneys for Plaintiffs*
*\*Pro hac vice applications forthcoming*