**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

REBECCA KELLY SLAUGHTER, in her
official and personal capacities, *et al.*,

       *Plaintiffs,*

         *v.*

DONALD J. TRUMP, in his official
capacity as President of the United States, *et
al..*,

       *Defendants.*

Case No. 1:25-cv-00909-LLA

**MEMORANDUM IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................................1

BACKGROUND ....................................................................................................................................3

I.      The FTC And Its Statutory Framework ...............................................................................3

II.     This Case ...................................................................................................................................8

LEGAL STANDARD .............................................................................................................................9

ARGUMENT .........................................................................................................................................9

I.      Restrictions on the Removal of FTC Commissioners Are Inconsistent with the President's Constitutional Authority and Therefore Unlawful .............................................9

II.     Even If the Commissioners' Removal Protections Were Lawful, Plaintiffs Are Not Entitled to Reinstatement, Injunctive Relief, or Mandamus. ......................................17

       A.    Plaintiffs Are Not Entitled to Reinstatement. ..................................................18

       B.    Plaintiffs Are Not Entitled to a Permanent Injunction. ...................................21

              1. Plaintiffs Cannot Establish Irreparable Harm as Their Injuries Could Be Remedied through a Suit for Backpay. ...............................................................22

              2. The Balance of Equities and Public Interest Favor Defendants. .............................24

       C.    Even Assuming That Plaintiffs Are Entitled to Declaratory Relief, That Relief Must Be Limited to a Declaration That Their Removals Were Unlawful. ...........................................................................................................25

       D.    Plaintiffs Are Not Entitled to a Writ of Mandamus. .......................................26

CONCLUSION ....................................................................................................................................27

## <u>TABLE OF AUTHORITIES</u>

CASES

*13th Regional Corp. v. U.S. Dep't of Interior,*
   654 F.2d 758 (D.C. Cir. 1980) ...........................................................................................27

*Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv.,*
   64 F.4th 1354 (D.C. Cir. 2023) ........................................................................................21

*Baker v. Carr,*
   369 U.S. 186 (1962) ...........................................................................................................19

*Berry v. Reagan,*
   No. 83-cv-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983),
   *vacated,* 732 F.2d 949 (D.C. Cir. 1983) ..................................................................... 20, 23

*Buckley v. Valeo,*
   424 U.S. 1 (1976) ........................................................................................................ 12, 15

*Burns v. GAO Emps. Fed. Credit Union,*
   No. 88-cv-3424, 1988 WL 134925 (D.D.C. Dec. 2, 1988).................................................23

*Cafeteria & Rest. Workers Union, Local 473 v. McElroy,*
   367 U.S. 886 (1961) ...........................................................................................................25

*Chaplaincy of Full Gospel Churches v. England,*
   454 F.3d 290 (D.C. Cir. 2006) ..........................................................................................22

*City of Arlington v. FCC,*
   569 U.S. 290 (2013) ..................................................................................................... 12, 14

*Collins v. Yellen,*
   594 U.S. 220 (2021) ............................................................................................2, 12, 13, 14

*Consol. Edison Co. v. Ashcroft,*
   286 F.3d 600 (D.C. Cir. 2002) ..........................................................................................26

*Consumers' Rsch. v. Consumer Prod. Safety Comm'n,*
   98 F.4th 646 (5th Cir. 2024)..............................................................................................27

*Davis v. Billington,*
   76 F. Supp. 3d 59 (D.D.C. 2014) ......................................................................................22

*EEOC v. City of Janesville,*
   630 F.2d 1254 (7th Cir. 1980).............................................................................................23

*Farris v. Rice,*
  453 F. Supp. 2d 76 (D.D.C. 2006) ........................................................................22

*Franks v. Nimmo,*
  683 F.2d 1290 (10th Cir. 1982) ...........................................................................22

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
  561 U.S. 477 (2010) ...........................................................................9, 10, 20, 25

*FTC v. Kroger Co.,*
  No. 3:24-CV-00347-AN (D. Or.) ...........................................................................7

*FTC v. Meta Platforms, Inc.,*
  No. 20-cv-3590 (D.D.C.) ......................................................................................7

*FTC v. Uber Techs., Inc.,*
  No. 3:25-cv-03477 (N.D. Cal.) .............................................................................8

*Gill v. Whitford,*
  585 U.S. 48 (2018) ..............................................................................................24

*Great Lakes Dredge & Dock Co. v. Huffman,*
  319 U.S. 293 (1943) ............................................................................................26

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.,*
  527 U.S. 308 (1999) ............................................................................................19

*Harkrader v. Wadley,*
  172 U.S. 148 (1898) ............................................................................................20

*Harris v. Bessent,*
  No. 25-5037, 2025 WL 1021435 (D.C. Cir. Apr. 7, 2025) ................................ 13, 18, 26, 27

*Heckler v. Ringer,*
  466 U.S. 602 (1984) ............................................................................................27

*Hein v. Freedom From Religion Found., Inc.,*
  551 U.S. 587 (2007) ............................................................................................24

*Hetreed v. Allstate Ins. Co.,*
  135 F.3d 1155 (7th Cir. 1998) .............................................................................22

*Humphrey's Executor v. United States,*
  295 U.S. 602 (1935) ......................................................................................passim

*In re Cheney,*
  406 F.3d 723 (D.C. Cir. 2005) ......................................................................26, 27

*In re Nat'l Nurses United,*
   47 F.4th 746 (D.C. Cir. 2022) .................................................................26

*In re Sawyer,*
   124 U.S. 200 (1888) ....................................................................... 19, 20

*Levesque v. Maine,*
   587 F.2d 78 (1st Cir. 1978) ...............................................................23

*Lewis v. Casey,*
   518 U.S. 343 (1996) ........................................................................24

*Macauley v. Waterman S.S. Corp.,*
   327 U.S. 540 (1946) ........................................................................26

*Mallory v. Norfolk S. R.R. Co.,*
   600 U.S. 122 (2023) ........................................................................13

*Marxe v. Jackson,*
   833 F.2d 1121 (3d Cir. 1987) ...........................................................22

*Morrison v. Olson,*
   487 U.S. 654 (1988) ................................................................... 10, 14

*Myers v. United States,*
   272 U.S. 52 (1926) .......................................................... 11, 18, 19, 23

*Nichols v. Agency for Int'l Dev.,*
   18 F. Supp. 2d 1 (D.D.C. 1998) .......................................................23

*Parsons v. United States,*
   167 U.S. 324 (1897) ........................................................................18

*PHH Corp. v. Consumer Fin. Prot. Bureau,*
   881 F.3d 75 (D.C. Cir. 2018) ..................................................... 10, 17

*Rubino v. City of Mount Vernon,*
   707 F.2d 53 (2d Cir. 1983) ...............................................................22

*Safari Club Int'l v. Jewell,*
   47 F. Supp. 3d 29 (D.D.C. 2014) .....................................................24

*Sampson v. Murray,*
   415 U.S. 61 (1974) ..............................................................21, 22, 25

*Samuels v. Mackell,*
   401 U.S. 66 (1971) ........................................................................26

*Seila Law LLC v. Consumer Fin. Prot. Bureau,*
 591 U.S. 197 (2020) .................................................................................................*passim*

*Service v. Dulles,*
 354 U.S. 363 (1957) .............................................................................................................21

*Severino v. Biden,*
 71 F. 4th 1038 (D.C. Cir. 2023) .........................................................................................9

*Shurtleff v. United States,*
 189 U.S. 311 (1903) .............................................................................................................18

*Swan v. Clinton,*
 100 F.3d 973 (D.C. Cir. 1996) ....................................................................................21, 27

*Trump v. United States,*
 603 U.S. 593 (2024) ......................................................................................................12, 26

*UC Health v. NLRB,*
 803 F.3d 669 (D.C. Cir. 2015) .........................................................................................13

*United States v. Arthrex, Inc.,*
 594 U.S. 1 (2021) .................................................................................................................16

*United States v. Perkins,*
 116 U.S. 483 (1886) .............................................................................................................10

*Vitarelli v. Seaton,*
 359 U.S. 535 (1959) .............................................................................................................21

*Walton v. House of Representatives,*
 265 U.S. 487 (1924) .............................................................................................................19

*White v. Berry,*
 171 U.S. 366 (1898) .............................................................................................................20

*Whitehorse v. Ill. Cent. R.R. Co.,*
 349 U.S. 366 (1955) .............................................................................................................27

*Wiener v. United States,*
 357 U.S. 349 (1958) ......................................................................................................18, 23

*Wis. Gas Co. v. FERC,*
 758 F.2d 669 (D.C. Cir. 1985) .........................................................................................22

**U.S. CONSTITUTION**

U.S. Const. Art. II, § 1 ....................................................................................................16

U.S. Const. Art. II, § 1, cl. 1 ......................................................................................... 1, 9

U.S. Const. Art. II, § 2, cl. 2 ..................................................................................... 10, 20

U.S. Const. Art. II, § 3 ...........................................................................................1, 9, 16, 25

**STATUTES**

5 U.S.C. § 18a .................................................................................................................6

5 U.S.C. § 18a(e)(1)(A) ....................................................................................................6

15 U.S.C. § 21 .................................................................................................................4

15 U.S.C. § 41 ......................................................................................................... 3, 9, 10

15 U.S.C. § 41(a)-(b) ......................................................................................................4

15 U.S.C. § 45(b) .................................................................................................... 4, 11, 12

15 U.S.C. § 45(c) .............................................................................................................4

15 U.S.C. § 45(l)-(m) .......................................................................................................4

15 U.S.C. § 45(m) ...........................................................................................................12

15 U.S.C. § 45(m)(1)(A) ..................................................................................................5

15 U.S.C. § 45(m)(1)(B)(2) ...............................................................................................5

15 U.S.C. § 46(a) ...................................................................................................... 5, 11

15 U.S.C. § 46(b) .............................................................................................................6

15 U.S.C. § 49 ........................................................................................................ 6, 11

15 U.S.C. § 50 .................................................................................................................6

15 U.S.C. § 53(b) ...................................................................................................... 5, 11

15 U.S.C. § 57a ...............................................................................................................5

15 U.S.C. § 57a(1)(B) ................................................................................................12

15 U.S.C. § 57b ................................................................................................4, 5, 12

15 U.S.C. § 57b-1(c) ........................................................................................... 6, 11

Clayton Antitrust Act of 1914, codified at 15 U.S.C. §§ 12–27. ................................3

Federal Trade Commission Act of 1914, codified at 15 U.S.C. § 41 *et seq.* ...............3

Federal Trade Commisison Act, Pub. L. No. 93-657, 88 Stat. 2183 (1975) ...............7, 15

Sherman Antitrust Act of 1890, codified at 15 U.S.C. §§ 1–38. ................................3

Trans-Alaska Pipeline Authorization Act, Pub. L. 93–153, 87 Stat. 576 (1973) ..........7, 15

Wheeler-Lea Act of 1938, Pub. L. No. 75-447, 52 Stat. 111, 111-112 .....................6, 15

## Rules

Fed. R. Civ. P. 56(a) ....................................................................................................9

## Regulations

16 C.F.R. § 3.42 ...........................................................................................................4

16 C.F.R. § 3.51–.54 ....................................................................................................4

16 C.F.R. § 4.14(b) .....................................................................................................23

16 C.F.R. § 464 *et seq.* ................................................................................................7

16 C.F.R. § 801 *et seq.* ................................................................................................7

## Other Authorities

Fed. Trade Comm'n, *What the FTC Does*, https://www.ftc.gov/news-events/media-resources/what-ftc-does (last visited Apr. 23, 2025) ...............................................................................4

Fed. Trade Comm'n, *Mark R. Meador*, https://www.ftc.gov/news-events/media-resources/what-ftc-does (last visited Apr. 23, 2025) ..............................................................................23

## INTRODUCTION

The Constitution vests the "'executive Power'—all of it"—in the President, who is given the sole responsibility to "take Care that the Laws be faithfully executed." *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203 (2020) (quoting U.S. Const. Art. II, § 1, cl. 1; *id.* § 3). That executive power encompasses the authority to remove those who aid the President in carrying out his duties. On March 18, 2025, the President exercised this power when he removed Plaintiffs Rebecca Kelly Slaughter and Alvaro M. Bedoya from their positions as Commissioners of the Federal Trade Commission (the "Commission" or "FTC"), an Executive Branch agency that exercises substantial executive power. Plaintiffs now challenge their removal, seeking an order that would reinstall them to their former principal offices. The Court should hold that Plaintiffs' termination was lawful because the Commissioners' removal protections are unconstitutional. In all events, the Court should deny Plaintiffs the extraordinary relief they seek, as reinstatement is beyond the authority of any Article III court to grant.

The Supreme Court recently reaffirmed the President's power to "remove—and thus supervise—those who wield executive power on his behalf." *Seila Law*, 591 U.S. at 204. The FTC wields such power. It investigates and prosecutes antitrust and consumer protection violations of vast economic and political significance before administrative tribunals and in federal court. It seeks injunctive relief and significant civil penalties to enforce FTC administrative orders and rules, and possesses independent litigating authority to send its own attorneys (not Department of Justice attorneys) to federal court to do so. Moreover, it exercises broad authority to promulgate rules and regulations with significant implications for nearly every facet of our nation's economy. For these reasons, neither of the two narrow exceptions the Supreme Court has recognized to the President's otherwise unrestricted removal power—for inferior officers with limited authority and for multimember bodies that exercise functions that are legislative and judicial, rather than executive—

1

applies here. FTC Commissioners must therefore be removable at will to ensure they, like the rest of the Executive Branch, are accountable to the people who elect the President.

Plaintiffs tell a different story, in which the Supreme Court in 1935 sanctioned in perpetuity the FTC's removal protections in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935). *See* Pls.' Mem. of Law in Supp. of Pls.' Mot. for Expedited Summ. J. ("Pls.' Mot.") at 1–2, ECF No. 20-2. That argument unravels given changes in both fact and law since 1935. On the facts, the FTC's powers have expanded significantly from those considered by the Supreme Court in 1935. The Supreme Court's characterization of the FTC in *Humphrey's Executor*—as primarily a legislative or judicial aid that prepared reports and recommendations for the Congress and the judiciary—bears no resemblance to the FTC today. As even Plaintiffs acknowledge, the FTC today exercises substantial executive power, such as the quintessential executive authority to seek injunctions and significant monetary penalties against private parties in federal court (an authority Congress conferred after 1935). Indeed, the Supreme Court has since clarified that the powers the Commission exercises today are, and must be, executive in nature. Accordingly, granting Defendants' motion for summary judgment does not require this Court to overrule *Humphrey's Executor*, which of course it cannot do. Instead, this Court should apply that decision—as elaborated on by the Supreme Court in *Seila Law* and *Collins v. Yellen*, 594 U.S. 220, 253 (2021)—to the Commission as it exists today. That analysis can yield only one conclusion: because FTC Commissioners exercise substantial executive power, they must be directly accountable to and removable by the President.

In any event, the relief that Plaintiffs seek—an injunction and declaratory relief compelling Defendants to reinstate Plaintiffs to a position from which the President removed them—should be rejected. Such relief would be unprecedented before this year, as executive officers challenging their removal have traditionally sought back pay, not reinstatement. It would also be unwarranted because the President cannot be compelled to retain the services of principal officers whom he no longer

believes should be entrusted with the exercise of executive power, and because this Court lacks the equitable power to issue an order reinstating a principal executive officer removed by the President.

Plaintiffs also fail to meet the additional factors that would entitle them to an injunction or mandamus relief. Plaintiffs' removal deprives them of employment and salary, but such consequences ordinarily do not amount to *irreparable* injury, as the traditional remedy for such claims has been an award of back pay at the end of the case. By contrast, an order requiring the President to reinstate officials he has chosen to remove from office would be an extraordinary intrusion on the President's exclusive authority to exercise control over the Executive Branch. Finally, the drastic writ of mandamus is unavailable because appointment and removal are no mere ministerial duties, and because Plaintiffs have not established any clear right to relief.

For these reasons, explained further below, the Court should enter summary judgment in favor of Defendants.

## BACKGROUND

### I.    The FTC And Its Statutory Framework

The FTC was created by the Federal Trade Commission Act of 1914, codified at 15 U.S.C. § 41 *et seq.* ("FTC Act" or the "Act"). The Commission is composed of five Commissioners, "appointed by the President, by and with the advice and consent of the Senate." 15 U.S.C. § 41. The Act dictates that "[n]ot more than three of the Commissioners shall be members of the same political party," and Commissioners "shall be appointed for terms of seven years." *Id.*

Pursuant to the FTC Act, other statutes that the FTC administers and enforces (including parts of the Sherman Antitrust Act of 1890, codified at 15 U.S.C. §§ 1-38, and the Clayton Antitrust Act of 1914, codified at 15 U.S.C. §§ 12-27), and subsequent amendments to those statutes, the Commission exercises vast law enforcement authority, rulemaking authority, and investigative

3

authority. That authority has expanded over time as Congress has conferred additional powers on the Commission, which today regulates nearly every facet of our nation's economy.

A. The Commission wields significant law enforcement authority under both antitrust and consumer protection laws "affecting virtually every area of commerce." Fed. Trade Comm'n, *What the FTC Does*, https://www.ftc.gov/news-events/media-resources/what-ftc-does (last visited Apr. 23, 2025); *see also* Pls.' Statement of Material Facts ¶ 17, ECF No. 20-1 (explaining that during Plaintiffs' tenure "the FTC took *significant actions* … with respect to some of the nation's largest corporations" and listing examples) (emphasis added). Under Section 5 of the FTC Act, for example, the Commission prosecutes unfair methods of competition (antitrust violations) and unfair or deceptive acts or practices affecting commerce (consumer protection violations). *See* 15 U.S.C. § 41(a)-(b). To exercise its Section 5 authority, the Commission may serve an administrative complaint stating its allegations. *Id.* § 45(b). Respondents then have the right to appear at a hearing and to "show cause" why the Commission should not issue a cease-and-desist order. *Id.* Hearings may be held before ALJs, who issue recommended decisions reviewable *de novo* by the Commission, or before the Commission in the first instance. *See* 16 C.F.R. §§ 3.42, 3.51-.54. The Commission's administrative cease-and-desist orders are then reviewable by courts of appeals. 15 U.S.C. § 45(c). Section 11 of the Clayton Act parallels Section 5(b) of the FTC Act in authorizing the Commission to prosecute its claims through administrative adjudications. 15 U.S.C. § 21.

Once the Commission issues a cease-and-desist order, it can also obtain monetary sanctions in some cases. If a company violates a cease-and-desist order, for example, the Commission may go to federal court to impose civil penalties or obtain a mandatory injunction. *Id.* § 45(*l*)-(m). Moreover, the Commission may seek relief in federal district court for consumer injury caused by the conduct at issue in the administrative proceeding. 15 U.S.C. § 57b. The Commission may also seek relief against non-parties if the Commission has determined that a practice is unfair or deceptive and that the

violator had "actual knowledge that such act or practice is unfair or deceptive and is unlawful." 15 U.S.C. § 45(m)(1)(B)(2).

The Commission can also prosecute its claims in federal court in the first instance. Section 13(b) of the FTC Act authorizes the Commission to seek preliminary and permanent injunctions whenever it has "reason to believe" that an entity "is violating, or is about to violate," "any provision of law enforced by the Federal Trade Commission." 15 U.S.C. § 53(b).

B. The Commission also possesses rulemaking authority to promulgate regulations that address unfair or deceptive practices. Under Section 18 of the FTC Act, the Commission is authorized to prescribe "rules which define with specificity acts or practices which are unfair or deceptive acts or practices in or affecting commerce" within the meaning of Section 5(a)(1) of the Act, if the Commission has reason to believe the relevant practices are "prevalent." 15 U.S.C. § 57a. Once the Commission has promulgated a rule under Section 18, anyone who violates the rule "with actual knowledge or knowledge fairly implied on the basis of objective circumstances that such act is unfair or deceptive and is prohibited by such rule" is liable for civil penalties, which the Commission or the Department of Justice may pursue through a lawsuit in federal court. 15 U.S.C. § 45(m)(1)(A). The Commission may also pursue recovery on behalf of consumers injured by the violation of the rule. 15 U.S.C. § 57b.

C. The Commission also wields significant investigative powers. Under Section 6 of the FTC Act, the Commission is empowered "to investigate from time to time the organization, business, conduct, practices, and management of any person, partnership, or corporation engaged in or whose business affects commerce." 15 U.S.C. § 46(a). Alongside that general investigative authority, the Commission may also "require, by general or special orders, persons, partnerships, and corporations, engaged in or whose business affects commerce . . . to file with the Commission in such form as the Commission may prescribe annual or special, or both annual and special, reports or answers in writing

to specific questions, furnishing to the Commission such information as it may require." *Id.* § 46(b). The Commission may seek a court order requiring compliance with the FTC's information requirements and seek civil penalties for noncompliance. 15 U.S.C. § 50.

Likewise, under Section 9 of the FTC Act, the Commission may "require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation." 15 U.S.C. § 49. Any single Commissioner may sign a subpoena pursuant to a Commission-issued resolution for compulsory process. *Id.* And if a party fails to comply with any such subpoena, the Commission may seek enforcement in "[a]ny of the district courts of the United States within the jurisdiction of which such inquiry is carried on." *Id.* Since 1994, the Commission may also issue "civil investigative demands," which can be used to obtain existing documents, oral testimony, written reports, and answers to questions. 15 U.S.C. § 57-b-1(c).

The Commission wields additional investigatory power under Section 7A of the Clayton Act. *See* 5 U.S.C. § 18a. That provision requires that parties to covered mergers or acquisitions notify the Commission and the Department of Justice before consummating the proposed acquisition. *Id.* And if the information provided is insufficient, the Commission may issue a second request, "requir[ing] the submission of additional information or documentary material relevant to the proposed acquisition." *Id.* § 18a(e)(1)(A).

D.  The Commission's powers have grown since the FTC's inception. For example, when the Supreme Court decided *Humphrey's Executor* in 1935, the FTC did not possess its consumer-protection power at all; its enforcement authority was limited only to "unfair methods of competition." Three years after *Humphrey's Executor*, Congress dramatically expanded the scope of the FTC's regulatory and enforcement authority by authorizing the FTC to prohibit "unfair or deceptive acts and practices." Wheeler-Lea Act of 1938, Pub. L. No. 75-447, 52 Stat. 111, 111-112 ("Wheeler-Lea Act"). The Commission then obtained in 1975 enforcement authority to seek monetary penalties under Section

5(m) of the FTC Act against private parties in federal court for violations of certain FTC rules. *See* Pub. L. No. 93-657, 88 Stat. 2183 (1975) (conferring authority under Section 5(m) of the FTC Act for the Commission to obtain civil penalties from entities that violate "any rule under this act respecting unfair or deceptive acts or practices"). Likewise, the Commission's broad authority to seek preliminary and permanent injunctions in federal court in the first instance for violations of any provision of law it enforces, discussed *supra* p. 5, was conferred only in 1973 through amendments to Section 13(b). *See* Trans-Alaska Pipeline Authorization Act, Pub. L. 93–153, 87 Stat. 576 (1973).

The FTC has exercised these powers to prosecute, regulate, and investigate entities across the nation's economy. Just in recent years, it has sued a major social media company in federal court alleging that the company systematically acquired rivals to obtain an unlawful monopoly. *See FTC v. Meta Platforms, Inc.*, No. 20-cv-3590 (D.D.C.). It issued regulations that modified Hart-Scott-Rodino Act pre-merger notification and disclosure requirements, *see* 16 C.F.R. § 801 *et seq.*, and prohibited unfair or deceptive "junk fees" in live-event tickets and short-term lodging, *see* 16 C.F.R. § 464 *et seq.* The FTC did not have power to issue either of those rules when the Supreme Court decided *Humphrey's Executor* in 1935. It successfully sued in federal court to block the largest proposed supermarket merger in United States history—Kroger Company's $24.6 billion acquisition of the Albertsons Companies, Inc.—alleging that the deal was anticompetitive. *See FTC v. Kroger Co.*, No. 3:24-CV-00347-AN (D. Or.). It has brought administrative proceedings against the three largest prescription drug benefit managers and their affiliates for engaging in anticompetitive and unfair rebating. inflating the list price of prescription drugs. *See In re Caremark Rx, L.L.C., et al.*, Docket No. 9437 (F.T.C. Sept. 20, 2024), https://perma.cc/883SPJLA. And just this week, the Commission sued Uber for deceptive billing and cancellation practices that it alleges violate the consumer protection laws—again, a suit the FTC could not have brought in 1935. *See FTC v. Uber Techs., Inc.*, No. 3:25-cv-03477 (N.D. Cal.).

## II.    This Case

Plaintiff Rebecca Kelly Slaughter was a Commissioner of the FTC, first nominated to serve as a Democratic Commissioner by President Trump and later re-nominated by President Biden.  Compl. ¶ 3, ECF No. 1 ("Compl.").  She was confirmed by the U.S. Senate on both occasions.  *Id.*  Her seven-year term would have expired on September 25, 2029.  *Id.*

Plaintiff Alvaro M. Bedoya was a Commissioner of the FTC, nominated by President Biden to serve as a Democratic Commissioner and confirmed by the U.S. Senate.  *Id.* ¶ 4.  His seven-year term would have expired on September 25, 2026.  *Id.*

On March 18, 2025, the Deputy Director of Presidential Personnel informed Plaintiffs Slaughter and Bedoya on behalf of President Trump that they had been removed from the FTC, effective immediately.  *See* Compl. Ex. A, ECF No. 1-2.  The letters explained that the narrow exception to the President's otherwise unrestricted removal power outlined in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), "does not fit the principal officers who head the FTC today" because "[a]s presently constituted, the FTC exercises substantial executive power."  Compl. Ex. A.  The letters concluded: "Your continued service on the FTC is inconsistent with my Administration's priorities. Accordingly, I am removing you from office pursuant to my authority under Article II of the Constitution."  *Id.*

Over a week later, on March 27, 2025, Plaintiffs sued to challenge their removals.  *See* Compl. Plaintiffs did not seek emergency relief.  Instead, on April 11, 2025, Plaintiffs moved for expedited summary judgment.  *See* Pls.' Mot. for Expedited Summ. J., ECF No. 20.  Plaintiffs seek a declaratory judgment that they were unlawfully removed as Commissioners of the FTC and an injunction that would:  (1) reinstate Plaintiffs as FTC Commissioners until their terms expire, unless they are earlier removed for cause; (2) enjoin Defendants other than President Trump from treating Plaintiffs as having been removed; and (3) order Defendants other than President Trump to provide Plaintiffs

with access to government facilities and equipment so that they may carry out the duties of FTC Commissioners.  *See* Proposed Order, ECF No. 20-5.

## LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

## ARGUMENT

**I.    Restrictions on the Removal of FTC Commissioners Are Inconsistent with the President's Constitutional Authority and Are Therefore Unlawful.**

Plaintiffs contend that the President did not validly remove them from office because Commissioners of the FTC may be removed only for "inefficiency, neglect of duty, or malfeasance in office."  15 U.S.C. § 41.  But FTC Commissioners are principal officers who lead a freestanding component within the Executive Branch and exercise significant executive power.  Accordingly, because the entirety of the executive power is vested in the President, *see* U.S. Const. Art. II, § 1, cl. 1, the President must be able to remove FTC Commissioners at will, and the Court should grant summary judgment for Defendants.

A.  The Constitution vests all of the "executive Power" in the President, who is given the sole responsibility to "take Care that the Laws be faithfully executed."  U.S. Const. Art. II, § 1, cl. 1; *id.* § 3; *see also Severino v. Biden*, 71 F. 4th 1038, 1043–44 (D.C. Cir. 2023).  "[A]s a general matter," the executive power encompasses "the authority to remove those who assist [the President] in carrying out his duties."  *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 513–14 (2010).  Without such power, the President would be unable to control those who aid him in executing the laws and "could not be held fully accountable for discharging his own responsibilities."  *Id.* at 514.

For nearly a century, the Supreme Court has repeatedly reaffirmed "the general rule that the President possesses 'the authority to remove those who assist him in carrying out his duties.'"  *Seila*

*Law*, 591 U.S. at 215 (quoting *Free Enter. Fund*, 561 U.S. at 514–15).  The Supreme Court has recognized "only two exceptions to the President's unrestricted removal power." *Id.* at 204.  First, in *Humphrey's Executor*, 295 U.S. 602, the Supreme Court held that Congress could impose for-cause removal restrictions on "a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *Seila Law*, 591 U.S. at 216.  Second, in *Morrison v. Olson*, 487 U.S. 654 (1988), and *United States v. Perkins*, 116 U.S. 483 (1886), the Court recognized an exception "for inferior officers with limited duties and no policymaking or administrative authority." *Seila Law*, 591 U.S. at 218.  Those exceptions represent the "outermost constitutional limits of permissible congressional restrictions on the President's removal power" under current precedent. *Id.* (quoting *PHH Corp. v. Consumer Fin. Prot. Bureau*, 881 F.3d 75, 196 (D.C. Cir. 2018) (Kavanaugh, J., dissenting)).

B.  Commissioners of the present-day FTC do not fit within either of these exceptions.  They are not inferior officers with narrowly defined duties; rather, they are principal officers appointed by the President with Senate confirmation. *See* U.S. Const. art. II, § 2, cl. 2; 15 U.S.C. § 41.  They oversee their own department. *See Free Enter. Fund*, 561 U.S. at 511 (explaining that a department "is a freestanding component of the Executive Branch, not subordinate to or contained within any other such component[]").  And they are not subservient to any other principal officer. *See* 15 U.S.C. § 41.  The *Morrison* exception therefore does not apply.

Nor does the *Humphrey's Executor* exception apply, notwithstanding the fact that that the FTC was the agency whose removal protections were addressed in that case.  In *Humphrey's Executor*, the Supreme Court upheld the constitutionality of a provision prohibiting removal of 1935 FTC Commissioners absent "inefficiency, neglect of duty, or malfeasance in office." 295 U.S. at 623.  Despite reaffirming the then-recent holding of *Myers v. United States*, 272 U.S. 52 (1926), that the President "has unrestrictable power . . . to remove purely executive officers," *id.* at 632, *Humphrey's*

*Executor* concluded that *Myers* did not control because the FTC Commissioner at issue was "an officer who occupies no place in the executive department and who exercises no part of the executive power vested by the Constitution in the President," *id.* at 628.  Instead, *Humphrey's Executor* understood the 1935 FTC to be "an administrative body" that "carr[ied] into effect legislative policies" and "perform[ed] other specified duties as a legislative or as a judicial aid."  *Id.*  Those duties, according to the Court, "c[ould ]not in any proper sense be characterized as an arm or an eye of the executive."  *Id.* The Court thus understood the 1935 FTC not to be exercising executive power at all but rather to "act[] in part quasi legislatively and in part quasi judicially."  *Id.*  On that understanding, *Humphrey's Executor* found no constitutional problem with restricting the removal of FTC Commissioners in 1935. But as the Supreme Court made clear in *Seila Law*, that exception is limited to "multimember bodies with 'quasi-judicial' or 'quasi-legislative' functions" that exercise no executive power.  *Seila Law*, 591 U.S. at 216–17 (quoting *Humphrey's Executor*, 295 U.S. at 632).

The present-day FTC is no "mere legislative or judicial aid," *id.* at 199, and instead exercises significant executive power.  The Commission investigates potential violations of the federal antitrust and consumer protection statutes.  *See* 15 U.S.C. § 46(a) (authorizing investigations of entities engaged in or whose business affects commerce); 15 U.S.C. § 49 (authorizing Commission to subpoena testimony and evidence "relating to any matter under investigation"); 15 U.S.C. § 57-b-1(c) (authorizing civil investigative demands).  And where the evidence supports such action, the Commission prosecutes violations of those statutes.  *See* 15 U.S.C. § 45(b) (authorizing Commission to bring administrative complaint for violations of Section 5 of the FTC Act); 15 U.S.C. § 53(b) (authorizing the Commission to seek preliminary and permanent injunctions in federal court).  These are quintessential executive functions:  "Investigative and prosecutorial decisionmaking is 'the special province of the Executive Branch,' and the Constitution vests the entirety of the executive power in the President."  *Trump v. United States*, 603 U.S. 593, 620 (2024) (citations omitted); *see also Buckley v.*

11

*Valeo*, 424 U.S. 1, 138–40 (1976) (recognizing interpreting and enforcing law through litigation as executive function).

Moreover, this "enforcement authority includes the power to seek daunting monetary penalties against private parties on behalf of the United States in federal court"—another "quintessentially executive power not considered in *Humphrey's Executor*." *Seila Law*, 591 U.S. at 219. Indeed, if an entity violates a cease-and-desist order that the Commission has issued, the Commission can go to court to impose civil penalties of up to $10,000 for each violation. 15 U.S.C. § 45(m). The Commission can also seek monetary relief in federal district court for consumer injury caused by conduct at issue in an administrative proceeding. 15 U.S.C. § 57b.

The Commission also exercises the executive power to "unilaterally issue final decisions awarding . . . relief in administrative adjudications." *Seila Law*, 591 U.S. at 219; *see* 15 U.S.C. § 45(b). These adjudications "are exercises of—indeed, under our constitutional structure they *must be* exercises of—the executive Power." *Seila Law*, 591 U.S. at 216 n.2 (quotations omitted); *City of Arlington v. FCC*, 569 U.S. 290, 305 n.4 (2013) (same).

Finally, the Commission wields the power to prescribe "rules which define with specificity acts or practices which are unfair or deceptive acts or practices in or affecting commerce" within the meaning of Section 5(a)(1) of the Act. 15 U.S.C. § 57a(1)(B). Because "interpreting a law enacted by Congress to implement the legislative mandate is the very essence of execution of the law," an agency "empowered to issue a 'regulation or order' . . . clearly exercises executive power." *Collins*, 594 U.S. at 254 (cleaned up). And that is particularly true because the Commission "possesses the authority to promulgate binding rules fleshing out" numerous "federal statutes, including a broad prohibition on unfair and deceptive practices in a major segment of the U.S. economy," *Seila Law*, 591 U.S. at 218. And the vast scope of the FTC's regulatory authority, exercised in rules like the Hart-Scott-Rodino and junk fees rules described *supra* p. 5, further confirms that the Commission exercises significant

12

executive power. *See Collins*, 594 U.S. at 253 ("FHFA actions with respect to those companies could have an immediate impact on millions of private individuals and the economy at large.").  Indeed, Plaintiffs themselves allege that the FTC "regulate[s] some of the nation's largest corporations," detailing nine actions the FTC has taken with vast impact on the nation's economy.  Compl. ¶ 31.

In sum, then, the FTC wields executive power and must be accountable to the President through the removal power. *See Seila Law*, 591 U.S. at 204 ("The President's power to remove—and thus supervise—those who wield executive power on his behalf follows from the text of Article II[.]").

C.  Plaintiffs nonetheless argue (Pls.' Mot. at 14-18) that *Humphrey's Executor* remains good law and continues to apply to the FTC.  Defendants do not dispute the first proposition:  Until the Supreme Court overrules it, *Humphrey's Executor* remains binding as to an agency with the characteristics assessed in that case.  *Harris v. Bessent*, No. 25-5037, 2025 WL 1021435, at *8 (D.C. Cir. Apr. 7, 2025) (Walker, J., dissenting) ("Each of us recognizes that a lower court cannot overrule *Humphrey's Executor*.  We simply disagree about how broadly to read it.").[1]  But the Supreme Court in *Humphrey's Executor* did not sanction removal protections in perpetuity for the FTC so long as it goes by that name.  Rather, it "limited its holding 'to officers of the kind here under consideration,'" as "the contours of the *Humphrey's Executor* exception depend upon the characteristics of the agency before the Court."  *Seila Law*, 591 U.S. at 215 (citation omitted).  This makes good sense; a judicial decision relates only "to a detailed set of facts."  *UC Health v. NLRB*, 803 F.3d 669, 682 (D.C. Cir. 2015) (Edwards, J., concurring) (collecting cases).  As with any decision, then, *Humphrey's Executor* dealt with a particular set of facts—those of the "1935 FTC" and the "New Deal-era FTC," as the

---

[1] While the government acknowledges that *Humphrey's Executor* is binding on this Court as to the 1935 FTC until overturned by the Supreme Court, *see Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122, 136 (2023), it preserves the argument that *Humphrey's Executor* was wrongly decided, *see, e.g., Seila Law*, 591 U.S. at 239–51 (Thomas and Gorsuch, JJ., concurring in part) (advocating for the Court to "reconsider *Humphrey's Executor in toto*").

Supreme Court repeatedly specified in *Seila Law*. 591 U.S. at 218; *see also Collins*, 594 U.S. at 278-88 (Sotomayor, J., concurring) (contrasting FHFA with the "1935 FTC" at issue in *Humphrey's Executor*).

Accordingly, the question is not whether *Humphrey's Executor* remains good law, but whether the Supreme Court's characterization of a 1935 FTC Commissioner—the characterization on which its holding rested—remains true of today's FTC Commissioners. On that score, Plaintiffs cannot seriously contend that *Humphrey's Executor*'s description of a 1935 FTC Commissioner as "an officer who occupies no place in the executive department and who exercises no part of the executive power vested by the Constitution in the President," 295 U.S. at 628, accurately describes a present-day Commissioner. Indeed, the Supreme Court has since held that *Humphrey's Executor*'s conclusion that the FTC did not wield executive authority was simply incorrect. *See Seila Law*, 591 U.S. 216 n.2 ("The Court's conclusion that the FTC did not exercise executive power has not withstood the test of time."); *Morrison*, 487 U.S. at 689 n.28 ("[I]t is hard to dispute that the powers of the FTC at the time of *Humphrey's Executor* would at the present time be considered 'executive,' at least to some degree."); *Arlington*, 569 U.S. at 305 n.4.

Plaintiffs insist (Pls.' Mot. at 17-18) that the FTC today exercises the same powers as were available to the FTC in 1935. But the Supreme Court rejected this very argument when the *Seila Law* dissenters advanced it, explaining: "Perhaps the FTC possessed broader rulemaking, enforcement, and adjudicatory powers than the *Humphrey's* Court appreciated. Perhaps not. Either way, what matters is the set of powers the Court considered as the basis for its decision, not any latent powers that the agency may have had not alluded to by the Court." *Seila Law*, 591 U.S. at 219 n.4. And the set of powers the Court actually considered in *Humphrey's Executor* were limited: the "FTC (as it existed in 1935) . . . was 'an administrative body' that performed 'specified duties as a legislative or as a judicial aid.' It acted 'as a legislative agency' in 'making investigations and reports' to Congress and 'as an

agency of the judiciary' in making recommendations to courts as a master in chancery." *Id.* at 216 (quoting *Humphrey's Executor*, 295 U.S. at 628).

In any event, Plaintiffs are wrong that the FTC's powers have not materially expanded since 1935. As detailed *supra* pp. 6-7, the FTC has acquired immense new authority since 1935. First, the 1935 FTC did not have any consumer-protection authority at all in 1935; it acquired that authority for the first time in 1938. *See* Wheeler-Lea Act, 52 Stat. at 111-12. Second, the Commission did not have the ability to seek monetary penalties under Section 5 of the FTC Act against private parties when the Court decided *Humphrey's Executor*. *See* Pub. L. No. 93-657, 88 Stat. 2183 (conferring authority under Section 5(m) of the FTC Act for the Commission to obtain civil penalties from entities that violate "any rule under this act respecting unfair or deceptive acts or practices"). *Seila Law* even characterized this "power to seek daunting monetary penalties against private parties in federal court" as "a quintessentially executive power not considered in *Humphrey's Executor*." *Seila Law*, 591 U.S. at 219. Finally, the Commission acquired after *Humphrey's Executor* was decided the ability to seek preliminary and permanent injunctions in federal court in the first instance, rather than following administrative adjudications. *See* Pub. L. 93-153, 87 Stat. 576; Pub. L. No. 75-447, 52 Stat. 111. That, too, is a quintessential executive function. *Buckley*, 424 U.S. at 138-40. Indeed, the overwhelming majority of the Commission's modern merger enforcement is conducted by means of its authority to obtain a preliminary injunction.

D.  Plaintiffs suggest (Pls.' Mot. at 17) that *Seila Law* reaffirmed the validity of *Humphrey's Executor* as applied to the present-day FTC. It did no such thing. To be sure, *Seila Law* explained in dicta that the Court's "severability analysis does not foreclose Congress from pursuing alternative responses to the problem—for example, converting the CFPB into a multimember agency." 591 U.S. at 237. But the Supreme Court did not have occasion to decide (and did not purport to decide) whether that "alternative response" would in fact remedy the constitutional defect. Nor did the

Supreme Court, which was addressing the CFPB, have occasion to opine on whether the characteristics of the present-day FTC fit within the contours of *Humphrey's Executor*, an analysis that *Seila Law* emphasized would be dispositive.  *Id.* at 215 ("[T]he contours of the *Humphrey's Executor* exception depend upon the characteristics of the agency before the Court.") (citation omitted).  For the reasons explained *supra* pp. 10-13, the present-day FTC exercises far too much executive power to fit within those contours.

Furthermore, Plaintiffs' reliance on a single sentence from the remedies analysis in *Seila Law* to suggest every multimember body falls within the *Humphrey's Executor* exception cannot be reconciled with the Supreme Court's reasoning throughout that case, which made clear that the *Humphrey's Executor* exception extends only to "a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said *not to exercise any executive power*."  591 U.S. at 216 (emphasis added); *id.* at 239 (Thomas, J., concurring in part) (recognizing this limitation). Indeed, *Seila Law* focused repeatedly on the *nature* of the agency's power, not the *form* of the agency exercising that power.  *See, e.g.*, *id.* at 218 (explaining *Humphrey's Executor* extends at most to "multimember expert agencies that do not wield substantial executive power"); *id.* at 217 (similar). That makes sense given that Article II vests all of the executive power in the President and assigns him the responsibility to take care that the laws are faithfully executed.  U.S. Const. art. II, §§ 1, 3. The President, and the President alone, is accountable to the American people for how he performs his duties, which ensures that the Executive Branch reflects the people's electoral judgments.  But that "line[] of accountability" is blurred if subordinates can wield the President's power without having to answer to him—whether those subordinates act alone or in a multimember body.  *United States v. Arthrex, Inc.*, 594 U.S. 1, 16 (2021).

E.    Finally, Plaintiffs argue (Pls.' Mot. at 18-22) that "history" and the "constitutional structure" support the constitutionality of the FTC's removal protections because the FTC and other

so-called "independent" agencies have existed for over a century. But the FTC has not always wielded the substantial executive power that it exercises today. As explained *supra* pp. 6-7, the FTC's powers have expanded materially over time. Nor has the President, as the leader of the Executive Branch, consistently acquiesced to Congress's attempts to impose restraints on his Article II removal authority. *See, e.g.*, *Humphrey's Executor*, 295 U.S. 602; *see also PHH Corp.*, 881 F.3d at 169 (Kavanaugh, J., dissenting).

The other agencies with removal protections that Plaintiffs identify are similarly immaterial to this court's analysis. For one, the constitutionality of some of those removal protections are the subject of pending litigation. *See Harris v. Bessent,* No. 25-5055 (D.C. Cir.) (appeal addressing constitutionality of removal protections for members of the National Labor Relations Board and Merit Systems Protection Board). In any event, the question before this Court is whether the FTC's removal protections are lawful, and that question turns on "the character of the office." *Humphrey's Executor*, 295 U.S. at 631. Indeed, *Seila Law* confirmed the dispositive role that the *functions* of the office play in assessing the constitutionality of removal protections. 591 U.S. at 216. Here, today's FTC's functions are indisputably executive, and the executive power it wields is indisputably substantial. Accordingly, the *Humphrey's Executor* exception is inapplicable and FTC Commissioners must be removable by the President at will.

## II. Even If the Commissioners' Removal Protections Were Constitutional, Plaintiffs Are Not Entitled to Reinstatement, Injunctive Relief, or Mandamus.

As explained above, President Trump lawfully exercised his Article II authority to remove his subordinates when he removed Plaintiffs. But even if Plaintiffs prevail on the merits, this Court should deny the broad relief that Plaintiffs seek, including reinstatement by injunction or declaratory relief, an expansive permanent injunction, and a writ of mandamus.

17

### A.  Plaintiffs Are Not Entitled to Reinstatement.

This Court lacks the power to issue any order reinstating principal executive officers removed by the President.  Traditionally, executive officers challenging their removal by the President have sought back pay, not reinstatement.  *See Wiener v. United States*, 357 U.S. 349, 350 (1958) (suit "for recovery of his salary"); *Humphrey's Executor*, 295 U.S. at 612 (suit "to recover a sum of money alleged to be due . . . for salary"); *Myers*, 272 U.S. at 106 (suit "for his salary from the date of his removal"); *Shurtleff v. United States*, 189 U.S. 311, 318 (1903) (suit "for salary"); *Parsons v. United States*, 167 U.S. 324, 326 (1897) (suit "for salary and fees").  That rule reflects the obvious separation of powers problems that arise if a court attempts to reinstate—that is, reappoint—a principal executive officer removed by the President.  The President cannot be compelled to retain the services of a principal officer whom he no longer believes should be entrusted with the exercise of executive power.  *See Harris*, 2025 WL 1021435, at *4 (Rao, J., dissenting) ("The government is likely to succeed on its remedial challenge because the injunctive relief concocted by the district court is wholly unprecedented and transgresses historical limits on our equitable authority.").  And the courts may not exercise the appointment power for principal officers, which the Constitution vests in the President alone.[2]

Indeed, many members of the First Congress argued against requiring the Senate's advice and consent for removals precisely because of the risk that such a procedure would require the President to retain someone he had sought to remove.  As Representative Benson observed: "If the Senate, upon its meeting, were to acquit the officer, and replace him in his station, the President would then

---

[2] Plaintiffs insist (Pls.' Mot. at 31) that "'reinstatement' is not the appropriate label for what Plaintiffs seek."  But an allegedly unlawful removal is still a removal, and there is no dispute that Plaintiffs are not performing their duties as Commissioners.  *See* Compl. ¶¶ 37-38 ("Plaintiffs Slaughter and Bedoya have been unable to fulfill their duties as Senate-confirmed FTC Commissioners.").  Accordingly, an order requiring subordinate officials to recognize Plaintiffs as Commissioners would amount to their reinstatement.

have a man forced on him whom he considered as unfaithful." *Myers*, 272 U.S. at 124 (citation omitted). Representative Boudinot argued: "But suppose [the Senate] shall decide in favor of the officer, what a situation is the President then in, surrounded by officers with whom, by his situation, he is compelled to act, but in whom he can have no confidence." *Id.* at 131–32 (citation omitted). And Representative Sedwick asked rhetorically: "Shall a man under these circumstances be saddled upon the President, who has been appointed for no other purpose but to aid the President in performing certain duties? Shall he be continued, I ask again, against the will of the President?" *Id.* at 132 (citation omitted). The broad declaratory and injunctive relief Plaintiffs seek raises just this problem.

A declaratory judgment or injunction reinstating Plaintiff would also exceed the scope of this Court's equitable powers. A federal court may grant only those equitable remedies that were "traditionally accorded by courts of equity." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999). Reinstatement of a public official is not such a remedy. "It is . . . well settled that a court of equity has no jurisdiction over the appointment and removal of public officers." *In re Sawyer*, 124 U.S. 200, 212 (1888). Instead, the Supreme Court explained, "[t]he jurisdiction to determine the title to a public office belongs exclusively to the courts of law," for instance through suits for back pay. *Id.* Thus, "the power of a court of equity to restrain by injunction the removal of a [public] officer has been denied in many well-considered cases." *Id.*; *see, e.g.*, *Baker v. Carr*, 369 U.S. 186, 231 (1962) (decisions that "held that federal equity power could not be exercised to enjoin a state proceeding to remove a public officer" or that "withheld federal equity from staying removal of a federal officer" reflect "a traditional limit upon equity jurisdiction[]"); *Walton v. House of Representatives*, 265 U.S. 487, 490 (1924) ("A court of equity has no jurisdiction over the appointment and removal of public officers."); *Harkrader v. Wadley*, 172 U.S. 148, 165 (1898) ("[T]o sustain a bill in equity to restrain . . . the removal of public officers, is to invade the domain of the courts of common law, or of the

executive and administrative department of the government.”); *White v. Berry*, 171 U.S. 366, 377 (1898) (“[A] court of equity will not, by injunction, restrain an executive officer from making a wrongful removal of a subordinate appointee, nor restrain the appointment of another.”) (citation omitted); Order at 3-4, *Dellinger v. Bessent*, No. 24A790 (U.S. Feb. 21, 2025) (Gorsuch, J., dissenting) (explaining that, “by the 1880s this Court considered it ‘well settled that a court of equity has no jurisdiction over the appointment and removal of public officers’”) (quoting *In re Sawyer*, 124 U. S. at 212).

“Perhaps the most telling indication of the severe constitutional problem with” the remedy Plaintiffs seek “is the lack of historical precedent.” *Free Enter. Fund*, 561 U.S. at 505 (citation omitted). There is no historical precedent for an Article III court to reinstate a principal officer before this year. At most, a district court in 1983 effectively reinstated removed members of the multimember U.S. Commission on Civil Rights because that court believed that the commission functioned as a “legislative agency” whose “only purpose” was “to find facts which [could] subsequently be used as a basis for legislative or executive action”—not to exercise any executive power in its own right. *Berry v. Reagan*, No. 83-cv-3182, 1983 WL 538, at *2 (D.D.C. Nov. 14, 1983) (citations omitted), *vacated*, 732 F.2d 949 (D.C. Cir. 1983). That is no support for Plaintiffs’ insistence that an agency head whom the President has fired must keep exercising core Article II executive power.

Plaintiffs suggest (Pls.’ Mot. at 31) that the longstanding rule preventing a court from enjoining the President does not apply because they seek an injunction against subordinate Executive Branch officials. But the relief Plaintiffs seek still usurps the President’s exclusive appointment authority, as the President is the “only official with the statutory and constitutional authority to appoint, remove, and supervise” agency heads. Order at 6 n.2, *Dellinger v. Bessent*, No. 25-5028 (D.C. Cir. Feb. 15, 2025) (Katsas, J., dissenting); *see also* U.S. Const. art. II, § 2, cl. 2 (vesting authority to appoint principal officers in President alone). Defendants Ferguson, Holyoak, and Robbins have no more authority than this Court to exercise the President’s appointment power at Plaintiffs’ behest. Therefore, any

relief effecting the reinstatement of Plaintiffs would prevent the President from exercising his lawful Article II authority to select Commissioners of his choosing. Whether the order is expressly directed at the President or not, courts lack power to issue any order reinstating principal executive officers removed by the President.[3]

**B. Plaintiffs Are Not Entitled to a Permanent Injunction.**

To establish that they are entitled to a permanent injunction, Plaintiffs must demonstrate: "'(1) that [they have] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff[s] and defendant[s], a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv.*, 64 F.4th 1354, 1364 (D.C. Cir. 2023). Plaintiffs have not established any of these factors and, for the reasons articulated *supra* pp. 18-21, this Court lacks the authority to issue the relief they request.

**1. Plaintiffs Cannot Establish Irreparable Harm as Their Injuries Could Be Remedied through a Suit for Backpay.**

The "high standard for irreparable injury" requires a significant showing by Plaintiffs. An irreparable injury "must be both certain and great." *Chaplaincy of Full Gospel Churches v. England*, 454

---

[3] *Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996) does not compel a contrary result. In *Swan*, the D.C. Circuit held only that the plaintiff, a former member of the National Credit Union Administration who had been removed by President Clinton, had *standing* to challenge his removal because his injury could be redressed by the actions of subordinate officials. *Id.* at 978–81; *see also id.* at 980–81 ("[W]e hold that the partial relief Swan can obtain against subordinate executive officials is sufficient for redressability, even recognizing that the President has the power, if he so chose, to undercut this relief."). Standing is not at issue in this case, and *Swan* expressly declined to decide whether courts have the authority to order reinstatement as a remedy, noting that it was not "determining whether we can order more complete relief[.]" *Id.* at 981. For the reasons stated, a court cannot do so. Plaintiffs' remaining authorities did not address principal or inferior executive officers and are therefore inapposite. *See Sampson v. Murray*, 415 U.S. 61 (1974) (discharged probationary employee in the Public Buildings Service); *Vitarelli v. Seaton*, 359 U.S. 535 (1959) (Education and Training Specialist in the Department of the Interior); *Service v. Dulles*, 354 U.S. 363 (1957) (Foreign Service Officer in Department of State).

F.3d 290, 297 (D.C. Cir. 2006) (citation omitted).  Accordingly, Plaintiffs "must show '[t]he injury complained of is of such imminence that there is a "clear and present" need for equitable relief to prevent irreparable harm.'" *Id.* (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).

Plaintiffs fail to meet their burden for this required showing.  They principally contend (Pls.' Mot. at 28) that their ongoing harm stems from the deprivation of their "'statutory right' to serve as officers on a multi-member commission created by Congress."   But Plaintiffs cite no injury of a kind that the Supreme Court has recognized as irreparable in this context.  *See Sampson*, 415 U.S. at 92 & n.68 (holding that, except in "genuinely extraordinary situation," loss of income and reputation do not amount to irreparable harm).  Rather, court after court in this Circuit and others has concluded that loss of employment does not constitute irreparable harm.  *See, e.g.*, *Hetreed v. Allstate Ins. Co.*, 135 F.3d 1155, 1158 (7th Cir. 1998); *Davis v. Billington*, 76 F. Supp. 3d 59, 65–66 (D.D.C. 2014) (collecting cases); *Farris v. Rice*, 453 F. Supp. 2d 76, 79–80 (D.D.C. 2006) ("cases are legion holding that loss of employment does not constitute irreparable injury").

Indeed, courts have repeatedly rejected the notion that the deprivation of a unique, singular, or high-level position is any more of an irreparable injury.  *See Hetreed*, 135 F.3d at 1158 (loss of position as senior manager leading audit department not irreparable injury); *Marxe v. Jackson*, 833 F.2d 1121, 1122 (3d Cir. 1987) (division manager); *Rubino v. City of Mount Vernon*, 707 F.2d 53 (2d Cir. 1983) (mayoral-appointed City Assessor); *Franks v. Nimmo*, 683 F.2d 1290, 1291 (10th Cir. 1982) (Associate Chief of Staff for Research and Development position at Department of Veterans Affairs Medical Center); *EEOC v. City of Janesville*, 630 F.2d 1254, 1256 (7th Cir. 1980) (Chief of Police); *Levesque v. Maine*, 587 F.2d 78, 79 (1st Cir. 1978) (Maine Commissioner of Manpower); *Nichols v. Agency for Int'l Dev.*, 18 F. Supp. 2d 1, 2, 4 (D.D.C. 1998) (Chief of Information Management Systems, Office of Inspector General); *Burns v. GAO Emps. Fed. Credit Union*, No. 88-cv-3424, 1988 WL 134925, at *1–2 (D.D.C. Dec. 2, 1988) (President of Credit Union Board of Directors).  Accordingly, when principal

officers have been removed from their posts, they generally have challenged those removals in suits for back pay. *See Humphrey's Executor*, 295 U.S. at 612 (challenge sought "to recover a sum of money alleged to be due"); *Myers*, 272 U.S. at 106 (same); *Wiener*, 357 U.S. at 349–51 (same). Remedies at law thus exist and could make Plaintiffs whole here, foreclosing any showing of irreparable harm.

Plaintiffs nonetheless argue (Pl.'s Mot. at 28) that the purported deprivation of their ability to carry out their statutory duties distinguishes this case from a typical loss-of-employment dispute. They rely for this proposition on a case that is plainly distinguishable and was later vacated by the D.C. Circuit: *Berry*, 1983 WL 538, at *5. In *Berry v. Reagan*, President Reagan removed several members of the Commission on Civil Rights, an action that left the Commission without a quorum and meant that it could not complete a report it was statutorily required to complete by a date certain. *Id.* at *1, *5. But Plaintiffs and the FTC are not similarly situated to the plaintiffs in *Berry* because the FTC continues to operate, as Plaintiffs concede, *see* Compl. ¶ 38 ("Since Plaintiffs' purported firing, only two FTC Commissioners have been able to perform their duties—Republican Commissioners Ferguson and Holyoak."). Indeed, after Commissioner Mark R. Meador was sworn in on April 16, 2025, *see* Fed. Trade Comm'n, *Mark R. Meador*, https://www.ftc.gov/about-ftc/commissioners-staff/mark-r-meador (last visited Apr. 23, 2025), there can be no question that the FTC will have a quorum to operate, *see* 16 C.F.R. § 4.14(b).[4]

Plaintiffs also theorize (Pls.' Mot. at 28-29) that absent an injunction "the President can fire all [executive officials] with impunity and simply demand that the taxpayers pick up the bill" for the monetary relief they would be owed. This harm is far too speculative to warrant an injunction. *Safari Club Int'l v. Jewell*, 47 F. Supp. 3d 29, 35 (D.D.C. 2014) ("Irreparable harm must be great and certain,

---

[4] Even if the FTC were left without a quorum, *Berry* would still be distinguishable. In *Berry*, the harm was irreparable in part because the commission was set to expire. 1983 WL 538, at *5. But here, the FTC will not cease to exist and could resume its functioning upon the resumption of a quorum, if further removals ever left it without one.

not speculative."). First, Plaintiffs have not even asked for backpay in this case. *See* Compl., Prayer for Relief. And in any event, that is not irreparable harm to *Plaintiffs*, who therefore lack Article III standing to obtain relief based on the interests of taxpayers generally. *See Gill v. Whitford*, 585 U.S. 48, 66 (2018) (Under Article III, "a plaintiff's remedy must be 'limited to the inadequacy that produced [her] injury in fact.'") (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)); *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 593 (2007) ("It has long been established, however, that the payment of taxes is generally not enough to establish standing to challenge an action taken by the Federal Government."). Plaintiffs therefore fail to establish irreparable harm and the absence of adequate remedies at law.

## 2. The Balance of Equities and Public Interest Favor Defendants.

The balance of the equities and public interest weigh strongly against reinstating Plaintiffs as Commissioners of the FTC. Because the FTC is an executive agency exercising executive power, an injunction functionally reinstating two of its principal officers would raise grave separation-of-powers concerns and work a great and irreparable harm to the Executive. *See* Order at 10, *Dellinger v. Bessent*, No. 25-5028 (D.C. Cir. Feb. 15, 2025) (Katsas, J., dissenting) (describing how "direct[ing] the President to recognize and work with an agency head whom he has already removed" "impinges on the 'conclusive and preclusive' power through which the President controls the Executive Branch that he is responsible for supervising" and thus causes irreparable harm). The President cannot be compelled to retain the services of principal officers whom the President no longer believes should be entrusted with the exercise of executive power. Imposing such a remedy would prevent the President from implementing his electoral mandate through his subordinates and undermine the accountability of the Executive Branch enshrined in the Constitution. The President "is elected by the entire Nation" and all executive officers "remain[] subject to the ongoing supervision and control of the elected President." *Seila Law*, 591 U.S. at 224. Adding additional exceptions to that constitutional rule—and

then reinstating principal officers subject to those additional exceptions—"heightens the concern that" the Executive Branch "may slip from the Executive's control, and thus from that of the people." *Free Enter. Fund*, 561 U.S. at 499. That result is an affront to the Constitution and to the American people, who elected President Trump to manage the Executive Branch of their government.

Moreover, the public interest is better served by FTC Commissioners who hold the President's confidence and, accordingly, will more effectively serve him in executing his duties as Chief Executive. "[T]he Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'" *Sampson*, 415 U.S. at 83 (quoting *Cafeteria & Rest. Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 896 (1961)). "Allowing another branch of government to insulate executive officers from presidential control . . . would sever a key constitutional link between the People and their government," contrary to the public interest. Order at 12, *Dellinger v. Bessent*, No. 25-5028 (D.C. Cir. Feb. 15, 2025) (Katsas, J., dissenting). Thus, Plaintiffs' claimed equities cannot outweigh the grave and unprecedented harm an injunction would cause to the separation of powers and the President's authority to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3.

### C. Even Assuming That Plaintiffs Are Entitled to Declaratory Relief, That Relief Must Be Limited to a Declaration That Their Removals Were Unlawful.

Because a declaratory-judgment suit is "essentially an equitable cause of action," "the same equitable principles relevant to the propriety of an injunction must be taken into consideration by federal district courts in determining whether to issue a declaratory judgment." *Samuels v. Mackell*, 401 U.S. 66, 70, 73 (1971) (citation omitted). Here, that principle precludes declaratory relief that would effectively reinstate Plaintiffs as Commissioners, such as a declaration that Plaintiffs are and shall continue to be Commissioners. For the same reasons that reinstatement by injunction is beyond the scope of this Court's equitable authority, *supra* pp. 18-21, reinstatement by declaratory relief is unavailable. *See Macauley v. Waterman S.S. Corp.*, 327 U.S. 540, 545 n.4 (1946) ("The same principles which justified dismissal of the cause insofar as it sought injunction justified denial of the prayer for a

declaratory judgment."); *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 300 (1943) (The Declaratory Judgment Act "only provided a new form of procedure for the adjudication of rights in conformity" with "established equitable principles.").

### D. Plaintiffs Are Not Entitled to a Writ of Mandamus.

Plaintiffs finally request (Pls.' Mot. at 32-34) a writ of mandamus if this Court denies injunctive relief. But mandamus "is drastic" and "is available only in extraordinary situations." *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (en banc) (quotation marks omitted). It requires that a petitioner establish that "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." *In re Nat'l Nurses United*, 47 F.4th 746, 752 n.4 (D.C. Cir. 2022). Moreover, mandamus is "inappropriate except where a public official has violated a 'ministerial' duty." *Consol. Edison Co. v. Ashcroft*, 286 F.3d 600, 605 (D.C. Cir. 2002).

Plaintiffs fail every step of this analysis. To start, Plaintiffs have not identified any such ministerial duty. The President's selection of who should lead an Executive Branch agency is certainly not a mere ministerial task—rather, it is a "conclusive and preclusive" prerogative of the President. *Trump*, 603 U.S. at 608-09 (citation omitted); *see also Harris*, 2025 WL 1021435, at *5 n.2 (Rao, J., dissenting) ("The President's exercise of his appointment and removal authority can in no way be denominated as 'ministerial,' however, as these powers are essential to his Article II power to control and supervise 'those who wield executive power on his behalf.'") (citations omitted).

Nor have Plaintiffs established a clear right to such relief. To the contrary, the D.C. Circuit has recognized that the availability of such relief poses "complicated and exceptionally difficult questions regarding the constitutional relationship between the judiciary and the executive branch." *Swan*, 100 F.3d at 981; *see also id.* at 978 (explaining the D.C. Circuit has "never attempted to exercise power to order the President to perform a ministerial duty"); *Harris*, 2025 WL 1021435, at *6 n.4 (Rao, J., dissenting) ("*Swan* says nothing about when it would be *appropriate* to impose mandamus.").

Likewise, Plaintiffs have not established that the President owes them a "clear nondiscretionary duty," *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). The potential availability of backpay also provides an adequate alternative remedy. *See supra* pp. 21-24. Mandamus therefore would not be an appropriate remedy here.

And even if those requirements were satisfied, the D.C. Circuit has long recognized that "mandamus is itself governed by equitable considerations and is to be granted only in the exercise of sound discretion." *13th Regional Corp. v. U.S. Dep't of Interior*, 654 F.2d 758, 760 (D.C. Cir. 1980) (quoting *Whitehorse v. Ill. Cent. R.R. Co.*, 349 U.S. 366, 373 (1955); *see also In re Cheney*, 406 F.3d at 729 (that mandamus is discretionary "even if the plaintiff overcomes all these hurdles"). It must "be found by a court to be clear and compelling on both legal and equitable grounds for a writ to issue." *13th Regional Corp.*, 654 F.2d at 760. After *Seila Law*, the removal restrictions here are unconstitutional or, at a minimum, their constitutionality is highly suspect. *Cf. Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 98 F.4th 646, 650 (5th Cir. 2024) (Oldham, J., joined by seven other judges, dissenting from the denial of rehearing en banc). Especially given that the equitable factors weigh decisively in the government's favor, mandamus would therefore not be proper.

## CONCLUSION

For all of these reasons, the Court should grant Defendants' cross-motion for summary judgment, deny Plaintiffs' motion for summary judgment, and enter judgment in favor of Defendants.

Dated: April 23, 2025                                     Respectfully submitted,


                                                         YAAKOV ROTH
                                                         *Acting Assistant Attorney General*

                                                         CHRISTOPHER R. HALL
                                                         *Assistant Branch Director*

                                                         EMILY HALL
                                                         *Counsel to the Acting Assistant Attorney General*

                                                         /s/ *Alexander W. Resar*
                                                         ALEXANDER W. RESAR
                                                         *Trial Attorney*
                                                         U.S. Department of Justice
                                                         Civil Division, Federal Programs Branch
                                                         1100 L Street, NW
                                                         Washington, DC 20530
                                                         Telephone: (202) 616-8188
                                                         Email: alexander.w.resar@usdoj.gov

                                                         *Counsel for Defendants*