UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

REBECCA KELLY SLAUGHTER, in her official and personal capacities, et al.,

                   *Plaintiffs,*

      v.

DONALD J. TRUMP, in his official capacity as President of the United States, et al.,

                   *Defendants.*

Case No. 25 Civ. 909

Judge Loren L. AliKhan

### PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING PLAINTIFF BEDOYA'S STANDING TO SEEK RELIEF IN THIS MATTER

    Plaintiffs filed this lawsuit to redress the harm caused by Defendants' attempt to unlawfully remove them as Commissioners on the Federal Trade Commission ("FTC"). In purporting to remove Plaintiffs from office and impeding their ability to carry out their duties, Defendants violated a 114-year old law providing that Commissioners can only be removed for a statutorily enumerated cause, *see* 15 U.S.C. § 41, and ignored nearly a century of Supreme Court precedent affirming the validity of that removal protection, *see Humphrey's Executor v. United States*, 295 U.S. 602 (1935). Defendants have never denied that Plaintiffs' purported removals violated this statute, which reflects Congress's considered decision that the FTC's expertise and integrity are "vital[]" to its mission. *Id.* at 625–26.

    On June 9, 2025, several months after President Trump attempted to remove him in violation of federal law, Plaintiff Alvaro M. Bedoya made the difficult decision to formally resign his position. Defendants left him little choice: They were preventing him from receiving the salary and benefits he and his family depend on, he could no longer afford to go without any source of income, and applicable rules and regulations limit an FTC Commissioner's ability to

1

accept other employment while serving on the Commission. Even assuming such rules and regulations did not apply to him in these unusual circumstances, his acceptance of other employment could have given rise to an appearance of impropriety or to actual or perceived conflicts of interest. Dk. 46-1 ¶¶ 7-8. Bedoya immediately informed the Court of this development, and, on June 11, 2025, the Court directed the parties to submit supplemental briefs addressing Bedoya's standing to seek relief in this matter.

Bedoya's decision to mitigate some of the harms he suffered as a result of Defendants' illegality does not deprive him of standing to continue to litigate this case. To the contrary, Defendants have caused Bedoya ongoing harms that can only be redressed by relief in this lawsuit. On the most basic level, Defendants continue to publicly disseminate official records and pronouncements asserting incorrectly that Bedoya's tenure ended on March 18, 2025 (not June 9, 2025), when he was purportedly fired by the President (not when he resigned). These inaccurate records and pronouncements cause Bedoya a variety of ongoing reputational, employment-related, and economic harms. Defendants have also caused actions he took while still lawfully serving as a Commissioner—including official statements and dissents from agency decisions—to be treated as if they emanated from a private citizen, not an FTC Commissioner still serving his lawful term in office. These and similar injuries require and deserve judicial redress, and the remedies Bedoya seeks in this case—declaratory and injunctive relief crafted to cure these injuries—establish his ongoing standing to litigate his claim. In addition, Bedoya has a concrete stake in resolving uncertainties about whether the President's attempted termination was legally valid and effective, regardless of how those uncertainties are resolved.

**Background**[1]

Plaintiff Alvara M. Bedoya was nominated by President Biden and confirmed by the U.S. Senate to serve a term as a Commissioner on the Federal Trade Commission. SMF ¶¶ 8-9. On May 16, 2022, he took his oath of office and commenced a term that was to expire on September 25, 2026. *Id*. ¶ 10. Yet, on March 18, 2025, he received an email message stating that President Trump was purporting to remove him from office. *Id*. ¶ 16. Shortly thereafter, Defendants took steps to prevent him from carrying out his duties as a Commissioner, including by blocking his access to his office, files, and staff, and modifying the FTC website to indicate that his time in office had ended. *Id*. ¶¶ 18-21. Along with Commissioner Rebecca Kelly Slaughter, on March 27, 2025, Bedoya filed this litigation seeking "all . . . appropriate relief," including specified declaratory and injunctive relief and relief in the nature of mandamus. *See generally* Dkt. 1.

After several months of being denied both the ability to carry out his duties as an FTC Commissioner and the salary and benefits he was entitled to receive, Bedoya was compelled to resign his position. *See* Dkt. 46 (Plaintiffs' Notice of Factual Development); Dkt. 46-1, ¶¶ 7-9 (Supp. Decl. of Alvaro M. Bedoya). Thus, Bedoya no longer seeks a declaration that he is currently a "Commissioner of the Federal Trade Commission," nor does he seek related injunctive relief that would allow him to resume the duties of his office. *See* Dkt. 1 at 19-20, ¶¶ (a), (c). However, Bedoya still seeks all relief appropriate to his new circumstances, including a declaration that his purported termination was unlawful, that he was a Commissioner of the FTC until the date of his formal resignation, that he was and is entitled to be treated as such, and related injunctive relief, *see* Dkt. 46-1 ¶ 10; *cf.* Dkt. 1 at 19-20, ¶¶ (a)-(d)).

---

[1] Unless otherwise noted, this brief retains the abbreviations used in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Expedited Summary Judgment, ECF No. 20-2.

**Argument**

To establish standing for purposes of Article III, a plaintiff must satisfy a three-pronged test: he must have "'(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Severino v. Biden*, 71 F.4th 1038, 1042 (D.C. Cir. 2023) (quoting *Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Bedoya continues to satisfy each of those requirements.

In fact, Defendants have already conceded that Bedoya's standing does not turn on whether he can or will resume his official duties as a Commissioner of the FTC. In their cross-motion for summary judgment, Defendants admitted that Bedoya's standing was "not at issue in this case," notwithstanding their view that this Court "lack[s] power to issue any order reinstating principal executive officers removed by the President." Dkt. 32-1 at 21 & n.3. Consistent with that position, Bedoya's formal resignation does not strip him of standing to seek the same remedies Defendants conceded he had standing to seek at the outset of this litigation, including a declaration that the President's attempt to terminate him without cause was "unlawful" and without legal effect, or a declaration that Bedoya was and is entitled to be "treated" as if he had been an FTC Commissioner until the date of his resignation. *See* Compl. at 18-19, ¶¶ (a)-(d); *Swan v. Clinton*, 100 F.3d 973, 979-80 (D.C. Cir. 1996).

1. *Injury in Fact*

Defendants have never denied that purporting to fire Bedoya, and treating him as if he had been fired, inflicted an injury-in-fact. Indeed, being unlawfully fired is a paradigmatic injury-in-fact. *See Severino*, 71 F.4th at 1042 ("It is indisputable that Severino has satisfied the first two elements of standing: Assuming the merits of his argument, his termination from the Council was a cognizable injury directly traceable to the defendants."); *Swan*, 100 F.3d at 976

4

("[A]ssuming that Swan is correct and the NCUA statute prohibited his removal, there is no doubt that this removal caused Swan to suffer a concrete and actual injury."). This injury continues, even after Bedoya's resignation.

To take the most basic example, Bedoya suffers an ongoing harm from Defendants' continued public, formal denial that he served as a Commissioner until June 9, 2025. Among other things, Defendants have caused the FTC's official website to misstate the length of his tenure, stating that his service in that role ended on "March 18, 2025," despite the fact that he was not validly terminated on that date, s*ee* SMF ¶ 19.[2] Defendants' dissemination of this false information hurts Bedoya in several ways: It understates the extent of his experience; it calls into doubt the information he has disclosed and plans to continue disclosing in the future about his tenure and the circumstances of his departure; and, because a statute provides that a Commissioner may be fired only for "inefficiency, neglect of duty, or malfeasance in office," it implies that he engaged in the kind of misconduct required to support a presidential termination (even if Defendants concede he did not). *Cf. McBryde v. Comm. to Review Circuit Council Conduct and Disability Orders of the Judicial Conf. of the U.S.*, 264 F.3d 52, 56-57 (D.C. Cir. 2001) ("Any thought that the reprimand is a past and irreversible harm is belied by the fact that it continues to be posted on the web site of the Fifth Circuit Court of Appeals, with a link on the home page alongside items for current use such as the court's calendar and opinions.").

Governmental action resulting in reputational harm creates the kind of injury necessary to support Article III standing, *see, e.g.*, *Meese v. Keene*, 481 U.S. 465, 472-476 (1987), and "even

---

[2] The same webpage also falsely describes his "Time in Office" as spanning "May 16, 2022 – March 18, 2025." In addition, it purports to provide links to his "Speeches, Articles, and Statements," but does not include any materials published subsequent to March 7, 2025. *See* https://www.ftc.gov/about-ftc/commissioners-staff/alvaro-bedoya. *But see infra* at 7.n.3.

5

seemingly flattering inaccuracies can hurt an individual's employment prospects as they may cause a prospective employer to question the applicant's truthfulness," *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1117 (9th Cir. 2017) (citing submission of the Consumer Financial Protection Bureau).  Here, the "inaccuracies" are decidedly unflattering—*i.e.,* that he was lawfully fired by the President and held his office for less time than he claims—and are likewise sufficient to establish a concrete and particularized injury.

Moreover, the ongoing factual and legal uncertainty regarding the date and circumstances of Bedoya's termination—which this action seeks to resolve—itself causes Bedoya a range of concrete harms.  For example, former government officials are subject to ongoing ethical and legal requirements, the scope of which may depend on the length of the former official's tenure.  *See, e.g.*, 18 U.S.C. § 207 (restricting former officers, *inter alia*, from working on certain matters pending before the agency during their terms in office); *id.* § 203 (prohibiting former officers from, *inter alia*, receiving compensation for work done during their term in office).  Bedoya also needs to know the date his tenure legally ended so he can accurately report information to state and federal authorities (including components of the federal government responsible for administering employment-related compensation, benefits, and pension programs, as well as any related tax policies), and to prospective employers and third-party insurance companies.  The persistence of such uncertainty harms Bedoya, regardless of how it is ultimately resolved.

Finally, between March 18 and June 9, 2025, Bedoya issued a number of statements commenting on or dissenting from FTC decisions.[3]  By failing to memorialize or publish those

---

[3] *See* Statement of Alvaro M. Bedoya & Commissioner Rebecca Kelly Slaughter on the Decision to Drop the FTC's Price Discrimination Lawsuit Against PepsiCo (May 28, 2025), *available at* https://x.com/BedoyaUSA/status/1928112309353742416; Statement of Commissioner Alvaro M. Bedoya & Commissioner Rebecca Kelly Slaughter on the Petition to Modify Exxon-Pioneer Final Order (May 12, 2025), *available at* https://www.regulations.gov/comment/FTC-2025-

positions as they would have in the normal course, Defendants have deprived the actions Bedoya took and the statements he issued of their legal status as the official acts of an FTC Commissioner.  The official votes, statements, and dissents of FTC Commissioners are memorialized in official records and disseminated to the public (*e.g.*, by inclusion in the Federal Register and/or the FTC's website).  *See, e.g.*, Guardian Service Industries, Inc.; Analysis of Agreement Containing Consent Order to Aid Public Comment, 89 Fed. Reg. 96980-01, 96983 (Dec. 6, 2024) (Dissenting Statement of Commissioner Andrew N. Ferguson), *available at* https://www.ftc.gov/legal-library/browse/federal-register-notices/guardian-service-industries-inc-analysis-agreement-containing-consent-order-aid-public-comment.  Commissioners' formal dissents are a critical part of the FTC's process and of the historical record.  As Defendant Ferguson has stated, "if you have an agency that is exceeding the law, abusing the companies that it purports to regulate, it's helpful for markets, for Courts, for litigants, for government transparency, to have people on the other party pointing this out and saying it in dissents."  SMF ¶ 15 (quotation marks omitted).  Bedoya is entitled to declaratory and injunctive relief that will ensure that the actions taken during his tenure as FTC Commissioner are duly recognized as official acts of an FTC Commissioner, and only the relief he seeks here can vindicate that right.

2. *Traceability*

The above-noted harms are "traceable" to actions by Defendants.  President Trump purported to fire Bedoya without statutory cause, and the other Defendants impeded his ability to act as a Commissioner and caused the FTC to misstate his tenure.  SUF ¶¶ 16, 18, 19, 21, 25.

---

0030-0332; Joint Statement of Commissioners Rebecca Kelly Slaughter & Alvara M. Bedoya in response to DOGE activities at the FTC (Apr. 10, 2025), *available at* https://protectdemocracy.org/work/joint-statement-of-commissioners-rebecca-kelly-slaughter-alvaro-m-bedoya-in-response-to-doge-activities-at-the-ftc/.

3. <u>Redressability</u>

"'Redressability examines whether the relief sought, assuming that the court chooses to grant it, would likely alleviate the particularized injury alleged by the plaintiff.'" *Abulhawa v. U.S. Dept. of the Treas.*, 239 F.Supp.3d 24, 36 (D.D.C. 2017) (quoting *West v. Lynch*, 845 F.3d 1228, 1235 (D.C. Cir. 2017) (cleaned up)). "'A party seeking judicial relief need not show to a certainty that a favorable decision will redress [its] injury.'" *Teton Historic Aviation Found. v. U.S. Dept. of Defense*, 785 F.3d 719, 726 (D.C. Cir. 2015) (quoting *Nat'l Wildlife Fed'n v. Hodel*, 839 F.2d 694, 705 (D.C. Cir. 1998) (alteration in original)). "The relevant question for standing . . . is not whether relief is *certain*, but only whether it is *likely*, as opposed to merely speculative." *Bennet v. Donovan*, 703 F.3d 582, 590 (D.C. Cir. 2013). Significantly, in a case challenging an unlawful removal, even "the partial relief [a plaintiff] can obtain against subordinate executive officials is sufficient for redressability." *Swan*, 100 F.3d at 980.

While Bedoya no longer seeks relief that would allow him to resume the duties of his office, he still seeks relief that would redress ongoing injuries caused by Defendants.

*Declaratory Relief.* Bedoya continues to seek a declaration that "the President's purported termination" of him was "unlawful" and without legal effect; that he was a Commissioner until his resignation on June 9, 2025; and that members of the Commission "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." *See* Dkt. 46, Compl. at 19-20, ¶¶ (a)-(c); *Kalbfus v. Siddons*, 42 App. D.C. 310, 321 (D.C. Cir. 1914) (explaining that an attempted illegal removal is "void," such that "the office" at issue "never became vacant," rendering action predicated on the attempted removal "a mere nullity").

"In this case, the declaratory judgment serves important functions in . . . clarifying the legal relations between [Bedoya and the Defendants], and establishing that [Defendants']

8

conduct on this record" violated the law and do not have legal effect. *Anatol Zukerman and Charles Krause Reporting, LLC v. United States*, 64 F.4th 1354, 1366-67 (D.C. Cir. 2023). For example, "a declaratory judgment may serve as the basis for issuance of a later injunction to give effect to the declaratory judgment." *Id*. at 1366.

A declaratory judgment would ensure, on an ongoing basis, that Defendants do not continue to (a) misstate his tenure as a Commissioner, (b) deny that he acted as an FTC Commissioner in issuing statements and dissents after his purported termination, or (c) tell the world that he was fired. In short, a declaration would definitively establish the veracity of Bedoya's claim to have served as a Commissioner until the date of his resignation and would provide a predicate for seeking any future injunctive relief to prevent Defendants from taking any further actions premised on Bedoya's putative firing. In other words, "[r]edress is possible in [this] case because the damage to reputation is caused by the challenged action," and thus "[a] declaratory judgment that the government's actions were unlawful will consequently provide meaningful relief." *Foretich v. United States*, 351 F.3d 1198, 1214 (D.C. Cir. 2003); *supra* at 5.

Finally, declaratory relief would likely resolve or clarify several concrete legal and practical questions that turn on the length of Bedoya's tenure on the FTC. The legal uncertainty regarding Bedoya's formal termination date affects a variety of concrete interests, including compliance with ongoing ethical requirements and his ability to accurately report information pertaining to employment-related benefits, compensation, and his pension. *See supra* at 6.

*Injunctive relief*. Appropriately crafted injunctive relief—or, alternatively, relief in the nature of mandamus—would also redress the "continuing effects" of the injuries Defendants

inflicted on Bedoya.[4]  *Anatol Zukerman and Charles Krause Reporting, LLC*, 64 F.4th at 1363. Such relief would include an order requiring the Non-Presidential Defendants to ensure that (a) all FTC statements concerning Bedoya's tenure, including on its website, accurately represent that he served until his resignation on June 9, 2025; (b) the Commission's website accurately catalogues his speeches, articles, and statements made throughout his legal tenure as a Commissioner; and (c) his official positions, including dissenting statements, are properly memorialized and publicly disseminated, including on the FTC's website and/or in the Federal Register, to the same extent they would have been absent his putative termination.

## Conclusion

For the reasons stated above, Plaintiffs respectfully submit that Plaintiff Bedoya continues to have standing to pursue his claims in this case and to seek the redress described herein.

Dated: June 18, 2025

Respectfully submitted,

CLARICK GUERON REISBAUM LLP

By: _/s/ Aaron Crowell_____
Aaron Crowell (*admitted pro hac vice*)
Gregory A. Clarick (*admitted pro hac vice*)
David Kimball-Stanley (*admitted pro hac vice*)
41 Madison Avenue, 23rd Floor
New York, NY 10010
Tel.: (212) 633-4310
acrowell@cgr-law.com
gclarick@cgr-law.com
dkimballstanley@cgr-law.com

---

[4] The injunctive relief Bedoya seeks would run against the Non-Presidential Defendants, not President Trump.  *See Severino*, 71 F.4th at 1043 n.1.

PROTECT DEMOCRACY PROJECT, INC.

Benjamin L. Berwick (D.D.C. Bar No. MA0004) 15 Main Street, Suite 312
Watertown, MA 02472
Tel.: (202) 579-4582
ben.berwick@protectdemocracy.org

Amit Agarwal (D.C. Bar No. 90002013)
Beau Tremitiere (*admitted pro hac vice*)
2020 Pennsylvania Ave. NW, Suite # 163
Washington, DC 20006
Tel.: (202) 579-4582
amit.agarwal@protectdemocracy.org
beau.tremitiere@protectdemocracy.org

Jared F. Davidson (*admitted pro hac vice*)
3014 Dauphine Street,
Suite New Orleans, LA
70117 Tel.: (202) 579-582
jared.davidson@protectdemocracy.org

DEMOCRACY AND RULE OF LAW CLINIC AT HARVARD LAW SCHOOL

Laurence M. Schwartztol (D.D.C. Bar. No. MA0007)
1525 Massachusetts Avenue
Cambridge, MA 02138
Tel:  (617) 998-1877
lschwartztol@law.harvard.edu

*Attorneys for Plaintiffs Rebecca Kelly Slaughter and Alvaro M. Bedoya*