**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| REBECCA KELLY SLAUGHTER, in her official and personal capacities, et al., | |
| *Plaintiffs*, | Case No. 25 Civ. 909-LLA |
| v. | Judge Loren L. AliKhan |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | |
| *Defendants*. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION**
**FOR STAY PENDING APPEAL**[1]

As Plaintiffs stated from the moment they filed this case, Defendants' attempt to remove them as FTC Commissioners "is indefensible under governing law." Dkt. 1 at 2. Because there were "no factual disputes here" and "the law is well settled," Plaintiffs moved for "immediate summary judgment." Dkt. 20-2 at 2. On July 17, 2025, this Court granted Plaintiffs' motion, affirming that "the law on the removal of FTC Commissioners is clear," and holding that Commissioner "Slaughter's purported removal was unlawful and without legal effect." Dkt. 51 ("Opinion") at 1, 31.[2] Accordingly, this Court entered judgment both declaring that Commissioner Slaughter's termination was illegal and enjoining the Non-Presidential

---

[1] On the afternoon of July 21, after this Court set a schedule for briefing this motion, Defendants filed an "Emergency Motion" seeking a stay in the D.C. Circuit. On the evening of July 21, the D.C. Circuit issued an administrative stay of this Court's July 17th Order (Dkt. 52) pending briefing on a motion to stay in that court. *See* Per Curiam Order, No. 25-5261 (D.C. Cir. July 21, 2025). This Court's briefing schedule remains in place, however, and thus Plaintiffs submit this opposition as directed.

[2] Plaintiff Bedoya resigned his position after his summary judgment application was fully submitted. *See* Dkts. 46-49. This Court held that Bedoya lacked standing to continue to pursue his claims, which were dismissed without prejudice. *See* Opinion at 7-9.

Defendants from preventing her from performing her lawful duties.  *See* Dkt. 52 at 1-2.  On the morning of July 18, Commissioner Slaughter returned to work, and she was once again publicly listed among the FTC's current Commissioners.[3]

Defendants ask this Court to stay its order pending Defendants' appeal.  *See* Dkts. 53 & 54.  This motion should be denied.  Defendants restate arguments this Court has already rejected and identify no error in the Court's analysis.  Likewise, Defendants point to no actual harm that will result if Commissioner Slaughter serves as an FTC Commissioner, as she has done since 2018, while their appeal proceeds.  SMF ¶¶ 2, 6.  By contrast, this Court has already held that Commissioner Slaughter will suffer irreparable harm if she continues to be barred from performing her duties, *see* Opinion at 35-37, and Defendants' motion provides no grounds for this Court to reach a different result.

The four-part test for obtaining a stay pending appeal is well-established: "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'"  *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).  The first two factors are the most critical.  *Nken*, 556 U.S. at 434.  Defendants have not carried their burden on any of these points.

<u>*First*</u>, Defendants do not make a "a strong showing" that they are "likely to succeed on the merits."  *Id.*  Defendants' motion does not engage with this Court's detailed analysis of the

_____

[3] As of July 21, 2025, Commissioner Slaughter was listed as an active Commissioner on the FTC website.  Once the D.C. Circuit's administrative stay was entered on the evening of July 21, she was yet again removed.  *See* Fed Trade Comm'n, Commissioners, https://www.ftc.gov/about-ftc/commissioners-staff/commissioners.

Supreme Court's removal case law, its application to the FTC, the availability of declaratory, injunctive, and (if necessary) mandamus relief,[4] or this Court's ultimate conclusion that "Defendants' removal of Ms. Slaughter was blatantly unlawful." *See* Opinion at 10-42.  Instead, Defendants merely point to stay orders issued in other cases, *see* Dkt. 54 at 2-3 (citing *Trump v. Wilcox*, No. 24A966, 605 U.S. ____ (2025) ("*Wilcox* Order"), and *Grundmann v. Trump*, No. 25-5165 (D.C. Cir.)), and assert that the "logic" of those orders "applies with equal force to the FTC," *id.* at 3.  However, as Defendants then candidly acknowledge, this Court already considered the relevance of the stay orders in those actions and concluded that "any suggestion" in those orders that "*Humphrey's Executor* may not extend to other agencies cannot be read as an invitation to sidestep its application to the FTC" here.  Opinion at 20 (cited in Dkt. 54 at 3).  Defendants are then left only to "respectfully disagree" with this Court's conclusion, providing no further analysis.  Dkt. 54 at 3.  This is hardly a "strong showing" that their appeal is likely to succeed.  *Nken*, 556 U.S. at 434.

 *Second*, Defendants do not demonstrate that they will suffer irreparable harm if Commissioner Slaughter remains in office while their appeal proceeds.  To prevail on this point, Defendants must do more than "simply show[] some possibility of irreparable injury," *id.* (quotation marks omitted), yet they have done far less.  In fact, Defendants offer *not a single word* describing how this Court's order actually causes them irreparable harm.  This is not

---

[4] Defendants' stay application does not attempt to argue that they are likely to succeed on any of the remedial arguments raised in their summary judgment briefing.  *Compare* Dkt. 33 at 17 ("Even If the Commissioners' Removal Protections Were Constitutional, Plaintiffs Are Not Entitled to Reinstatement, Injunctive Relief, or Mandamus"), *with* Dkt. ECF 54 at 3-4 (omitting any such argument).  Thus, the Court need not consider those abandoned arguments in disposing of the stay application and, in any event, this Court has already explained why Commissioner Slaughter is entitled to declaratory and injunctive (or, in the alternative, mandamus) relief. Opinion at 32-40 & n.12; *see, e.g.*, *Swan v. Clinton*, 100 F.3d 973, 976–81 (D.C. Cir. 1996); *Severino v. Biden*, 71 F.4th 1038, 1042–43 (D.C. Cir. 2023).

surprising. The FTC Act's removal protections have been complied with "by thirteen executives over the course of ninety years," Opinion at 41, a period which includes the entirety of President Trump's first term, during which he appointed Commissioner Slaughter, among others, to the FTC. Dkt. 20-1 ("SMF") ¶ 1. Defendants' argument boils down to the contention that they suffer if the FTC is not "a subservient agency" or if any Commissioner is not "subject to the whims of the President and wholly lacking in autonomy," Dkt 51 at 36, but that is not the law, as this Court held, *id.*; *see also R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015) (noting that the government "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required").

Instead of identifying any specific harm they will suffer from Commissioner Slaughter's continued service at the FTC, Defendants (again) rely entirely on the *Wilcox* and *Grundmann* stay orders. Dkt. 54 at 4. However, they make no attempt to explain why the potential harms identified in those cases are relevant here. In *Wilcox*, for example, the government emphasized it would suffer irreparable harm because the plaintiffs threatened to tip the balance of power of the NLRB (which, with Wilcox, "would have two Democratic members, one Republican member, and two vacancies") and the MSPB (which, with Harris, "would have one Democratic member, one Republican member, and one vacancy"), *Trump v. Wilcox*, No. 24A966, 605 U.S. (2025), Application for a Stay at 33. Likewise, Grundmann would have been in a position to break deadlocked votes at the FLRA. *See Grundmann v. Trump*, No. CV 25-425 (SLS), 2025 WL 1671173, at *4 (D.D.C. June 13, 2025).[5] Here, by contrast, Commissioner Slaughter is the lone

---

[5] Moreover, Grundmann's term expired on July 1, 2025, two days before the D.C. Circuit stayed the District Court's order, *see* 2025 WL 1671173, at *4. Thus, the public's interest in Grundmann serving beyond her term pending a new appointee is far weaker than here, where Commissioner Slaughter's statutory term runs into 2029. SMF ¶ 7.

Democratic Commissioner on an FTC that has (1) a governing majority of three Republican appointees *and* (2) every other mechanism of Presidential control that Courts have found critical in upholding removal protections, *see* Dkt. 38 at 21-23.

Thus, the "risk of harm from an order allowing a removed officer to continue exercising the executive power," *Wilcox* Order at 1, is far more attenuated here than in *Wilcox* or *Grundmann*. Indeed, any "disruptive effect" from Commissioner Slaughter's return to the FTC "during the pendency of this litigation," *id.* at 2, is far more muted where she could only take substantive action if joined by her Republican colleagues on the Commission. *See PHH Corp. v. CFPB*, 881 F.3d 75, 183 (D.C. Cir. 2018) (Kavanaugh, J., dissenting) ("The point is simple but profound. In a multi-member independent agency, no single commissioner or board member can *affirmatively* do much of anything.").

Finally, Defendants' maximalist reading of snippets from the *Wilcox* Order is untenable. They appear to view *Wilcox* as having categorically held that the President is irreparably harmed by having even a "blatantly unlawful" removal enjoined pending a legal challenge. Opinion at 32. But such a categorical presumption would have perverse effects: federal for-cause removal protections typically attach to officials serving a fixed term. *See, e.g.*, Dkt. 20-2 at 20-21 (compiling relevant statutes). Thus, under such a regime, the President could effectively run out the clock (or irrevocably shorten the official's term) even if his action had no legal basis and he did not prevail on the merits. Neither law, logic, nor *Wilcox* supports such a sweeping change in the law. Indeed, even in its abbreviated discussion, the Supreme Court eschewed the prospect of giving the President an unqualified right to violate for-cause removal statutes, as Defendants' reading of *Wilcox* would. *See Wilcox* Order at 2 (rejecting the contention that "arguments in this case necessarily implicate the constitutionality of for-cause removal protections for members of

the Federal Reserve Board of Governors or other members of the Federal Open Market Committee"). In sum, the *Wilcox* Order addressed the application, agencies, and facts before it; it did not announce the sweeping new principle that Defendants desire. *See Associated Press v. Budowich*, No. 25-5109, 2025 WL 1649265, at *4 (D.C. Cir. June 6, 2025) ("While these factors guide our assessment, a stay is an exercise of equitable discretion, and therefore '[t]he propriety of its issue . . . depend[s] upon the circumstances of the particular case.'" (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672–73 (1926))).

*Third*, the impact on other parties and the public interest also militate strongly against granting a stay. Those factors "merge" when the government is the party seeking a stay, *Nken*, 556 U.S. at 435, and Defendants make no serious effort to explain how the balance favors them. Again, they simply cite *Wilcox* and assert that the issues here are "substantively identical." Dkt. 54 at 4. This falls far short of meeting their burden.

"Under the public interest prong, the views of 'Congress, the elected representatives of the entire nation,'" are a critical "'gauge[]'" for courts to consider. *Shays v. FEC*, 340 F. Supp. 2d 39, 53 (D.D.C. 2004) (quoting *Cuomo v. U.S. Nuclear Regulatory Com'n*, 772 F.2d 972, 978 (D.C. Cir. 1985)). For that reason, "there is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)). That commonsense principle applies to laws providing for-cause removal protections, which effectuate important public policies, *see Humphrey's Executor v. United States*, 295 U.S. 602, 624–26, 629 (1935); Opinion at 38-39.

In fact, the record here strongly supports the conclusion that allowing Commissioner Slaughter to serve actively promotes the public good. Defendant Chairman Ferguson has been

eloquent regarding the public benefits that minority FTC Commissioners provide: "[I]f you have an agency that is exceeding the law, abusing the companies that it purports to regulate, it's helpful for markets, for Courts, for litigants, for government transparency, to have people on the other party pointing this out and saying it in dissents."  SMF ¶ 15.  He contends that his service in that role served the public during the Biden administration.  *Id.*  Commissioner Slaughter's service would do the same today.

Then-Judge Kavanaugh similarly observed in *PHH Corporation v. CFPB* that "[m]ulti-member independent agencies" like the FTC "benefit from diverse perspectives and different points of view among the commissioners," which "make it more likely that the costs and downsides of proposed decisions will be more fully ventilated." 881 F.3d at 183-84 (Kavanaugh, J., dissenting).  On this record, Defendants simply cannot show that the public interest would be served by a stay.  To the contrary, Commissioner Slaughter's service as "'a built-in monitoring system" or ""fire alarm' that alerts Congress and the public at large that the agency's decision might merit closer scrutiny'" is entirely to the public's benefit.  *Id.* (quoting Rachel E. Barkow, *Insulating Agencies: Avoiding Capture Through Institutional Design*, 89 Tex. L. Rev. 15, 41 (2010)).

For the foregoing reasons, the Court should deny Defendants motion for a stay pending appeal.

Dated: July 22, 2025                         Respectfully submitted,

                                             CLARICK GUERON REISBAUM LLP

                                             By: /s/ Aaron Crowell_____
                                             Aaron Crowell (*admitted pro hac vice*)
                                             Gregory A. Clarick (*admitted pro hac vice*)
                                             David Kimball-Stanley (*admitted pro hac vice*)
                                             41 Madison Avenue, 23rd Floor
                                             New York, NY 10010

Tel.: (212) 633-4310
acrowell@cgr-law.com
gclarick@cgr-law.com
dkimballstanley@cgr-law.com

PROTECT DEMOCRACY PROJECT, INC.

Benjamin L. Berwick (D.D.C. Bar No.
MA0004) 15 Main Street, Suite 312
Watertown, MA 02472
Tel.: (202) 579-4582
ben.berwick@protectdemocracy.org

Amit Agarwal (D.C. Bar No. 90002013)
Beau Tremitiere (*admitted pro hac vice*)
2020 Pennsylvania Ave. NW, Suite # 163
Washington, DC 20006
Tel.: (202) 579-4582
amit.agarwal@protectdemocracy.org
beau.tremitiere@protectdemocracy.org

Jared F. Davidson (*admitted pro hac vice*)
3014 Dauphine Street, Suite J
New Orleans, LA 70117
Tel.: (202) 579-4582
jared.davidson@protectdemocracy.org

DEMOCRACY AND RULE OF LAW CLINIC AT HARVARD
LAW SCHOOL

Laurence M. Schwartztol (D.D.C. Bar. No. MA0007)
1525 Massachusetts Avenue
Cambridge, MA 02138
Tel:  (617) 998-1877
lschwartztol@law.harvard.edu

*Attorneys for Plaintiffs Rebecca Kelly Slaughter
and Alvaro M. Bedoya*