UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

REBECCA KELLY SLAUGHTER,
in her official and personal capacities,

*Plaintiff*,

v.

DONALD J. TRUMP, *et al.*,

*Defendants*.

Civil Action No. 25 - 909 (LLA)

## ORDER

In March 2025, Plaintiff Rebecca Slaughter brought this action against President Donald J. Trump, Federal Trade Commission ("FTC") Chair Andrew Ferguson, FTC Commissioner Melissa Holyoak, and FTC Executive Director David Robbins to challenge President Trump's decision to remove her as an FTC Commissioner. ECF No. 1. On July 17, 2025, this court issued an order granting Ms. Slaughter's Motion for Summary Judgment and denying Defendants' Cross-Motion for Summary Judgment. ECF No. 52. Accordingly, the court enjoined Mr. Ferguson, Ms. Holyoak, Mr. Robbins, and their subordinates and agents "from removing Ms. Slaughter from her lawful position as an FTC Commissioner or otherwise interfering with Ms. Slaughter's right to perform her lawful duties as an FTC Commissioner until the expiration of her term or unless she is lawfully removed by the President for 'inefficiency, neglect of duty, or malfeasance in office' pursuant to 15 U.S.C. § 41." *Id.* at 2. That same day, Defendants noticed an appeal to the U.S. Court of Appeals for the D.C. Circuit, ECF No. 53, and filed—in this court—a motion to stay the order pending appeal, ECF No. 54. Such a motion was consistent with Federal Rule of Appellate Procedure 8(a), which explains that "[a] party must ordinarily move first in the district

court for . . . a stay of the judgment or order of a district court pending appeal [or] an order suspending, modifying, restoring, or granting an injunction while an appeal is pending." Fed. R. App. P. 8(a); *see* Fed. R. Civ. P. 62(c)(1), (d).  On July 20, this court set a briefing schedule on Defendants' stay motion, with briefing to conclude on July 23.  *See* July 20, 2025 Minute Order.

While the D.C. Circuit's internal procedures instruct that "[i]f the district court . . . denies the [stay] relief requested, an application may *then* be made to [the D.C. Circuit]," D.C. Cir. Handbook of Practice & Internal Procedures VIII.A (Dec. 12, 2024) (emphasis added), Defendants declined to wait for the ordinary stay process to play out.  On July 21, only a day after this court set its briefing schedule, they filed an emergency motion for a stay pending appeal and an administrative stay of this court's order in the D.C. Circuit.  Emergency Mot. to Stay, *Slaughter v. Trump*, No. 25-5261 (D.C. Cir. July 21, 2025).  While Defendants briefly mentioned that they had sought a stay in this court, *id.* at 9 n.2, they neglected to inform the Circuit that briefing on the motion was ongoing, nor did they assert that seeking a stay in the district court would be "impracticable," Fed. R. App. P. 8(a)(2)(A)(i).  On the evening of July 21, the D.C. Circuit issued a brief order granting an administrative stay "to give the court sufficient opportunity to consider the motion for a stay pending appeal."  Order, *Slaughter*, No. 25-5261 (D.C. Cir. July 21, 2025) (per curiam).  The panel explained that the order was "not [to] be construed in any way as a ruling on the merits of [the] motion [for a stay pending appeal]."  *Id.*

The parties completed briefing on this court's stay motion yesterday, *see* ECF No. 57, and they will compete briefing on their stay motion in the D.C. Circuit by July 29, Order, *Slaughter*, No. 25-5261 (D.C. Cir. July 21, 2025).  While the D.C. Circuit's administrative stay freezes the proceedings independently of any action by this court, the court nevertheless feels obligated to discharge its independent duty under Federal Rule of Civil Procedure 62(c) & (d) and Federal Rule

of Appellate Procedure 8(a) to rule on the stay motion pending before it.  And, for the reasons explained below, the court denies the motion to stay.

In deciding whether to grant a stay pending appeal, the district court considers: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the [c]ourt grants the stay; and (4) the public interest in granting the stay." *Nat'l Ass'n of Mfrs. v. Taylor*, 549 F. Supp. 2d 68, 71 (D.D.C. 2008) (quoting *Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985)).  The movant bears the burden of "justify[ing] the court's exercise of such an extraordinary remedy."  *Id.* (quoting *Cuomo*, 772 F.2d at 978).  The court addresses each factor in turn.[1]

*Likelihood of success on the merits.*  Having suffered a defeat at the summary-judgment stage, Defendants now insist that they are likely to prevail on the merits before the D.C. Circuit. Defendants chiefly rely on the Supreme Court's recent stay of two district court orders that enabled members of the National Labor Relations Board ("NLRB") and Merit Systems Protection Board ("MSPB") to continue serving in their appointed roles.  *Trump v. Wilcox*, 145 S. Ct. 1415, 1415

---

[1] Both parties cite *Nken v. Holder*, 556 U.S. 418 (2009), for the proposition that the third and fourth factors merge "in cases involving the government." ECF No. 54, at 4; *see* ECF No. 56, at 6. Under *Nken*, however, these factors only merge "when the Government is the [party] *opposing* [the stay]." 556 U.S. at 435 (emphasis added); *see U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 353 (5th Cir. 2022) (explaining that when the government is the party seeking a stay, "[t]he public interest factor is . . . distinct"). In any event, because both Ms. Slaughter and Defendants are government officials with conflicting interests, merger is all the more inappropriate.

(2025) (staying *Wilcox v. Trump*, 775 F. Supp. 3d 215 (D.D.C. 2025), and *Harris v. Bessent*, 775 F. Supp. 3d 164 (D.D.C. 2025)).[2]  The court disagrees for two primary reasons.

First, while the Supreme Court's stay "reflect[ed] [its] judgment that the Government is likely to show that both the *NLRB* and *MSPB* exercise considerable executive power," the order made no mention of the *FTC* and did not once cite *Humphrey's Executor*, 295 U.S. 602 (1935)— the pivotal decision at the heart of *this* case.  *See Wilcox*, 145 S. Ct. at 1415 (emphases added); *id.* at 1419 (Kagan, J., dissenting) (explaining that the majority contravened *Humphrey's Executor* "without so much as mentioning *Humphrey's*").  Defendants assert that *Wilcox* "applies with equal force to the FTC, which wields as much or more executive power as those agencies."  ECF No. 54, at 3.  But unless the Supreme Court expressly overrules *Humphrey's Executor*, which speaks directly to removal protections for FTC Commissioners, this court will not usurp the Supreme Court's "prerogative . . . to overrule one of its [own] precedents."  *United States v. Hatter*, 532 U.S. 557, 567 (2001) (quoting *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997)).[3]  Even when a lower

---

[2] Defendants also rely on the D.C. Circuit's recent stay of a similar district court order effectively reinstating a member of the Federal Labor Relations Authority ("FLRA").  *Grundmann v. Trump*, No. 25-5165, 2025 WL 1840641, at *1 (D.C. Cir. July 3, 2025) (per curiam) (staying *Grundmann v. Trump*, 770 F. Supp. 3d 166 (D.D.C. 2025)).  Because the *Grundmann* stay order relies entirely on the reasoning of the Supreme Court's stay in *Wilcox*, *see Grundmann*, 2025 WL 1840641, at *1 ("The Supreme Court's reasoning [in *Wilcox*] fully applies to the FLRA, which possesses powers substantially similar to those of the NLRB."), the court will focus its analysis on the Supreme Court's order.

[3] For the same reason, the court also distinguishes the Supreme Court's recent stay of a district court order effectively reinstating several members of the Consumer Products Safety Commission ("CPSC").  *See Trump v. Boyle*, No. 25A11, 2025 WL 2056889, at *1 (July 23, 2025) (staying *Boyle v. Trump*, No. 25-CV-1628, 2025 WL 1677099 (D. Md. June 13, 2025)).  That ruling again made no mention of *Humphrey's Executor* or the FTC.  Instead, it relied entirely on the existing stay order in *Wilcox* because "the [CPSC] exercises executive power in a similar manner as the [NLRB], and the case does not otherwise differ from *Wilcox* in any pertinent respect."  *Boyle*, 2025 WL 2056889, at *1.  If the Supreme Court determines that this same logic applies to an FTC

(*continued on next page*)

court believes that existing "precedent is in tension with 'some other line of decisions,'" it cannot unilaterally assume that established law has been "'implicitly overruled.'" *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023) (first quoting *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989), then quoting *Mallory v. Norfolk S. Ry. Co.*, 266 A.3d 542, 559 (Pa. 2021)). Until the current Supreme Court speaks clearly as to the fate of *Humphrey's Executor*, this court cannot—and will not—presume that a ninety-year-old ruling is no longer good law.[4]

Second, the Supreme Court's stay order was an initial, four-paragraph assessment of two complicated cases without "full briefing and argument." *Wilcox*, 145 S. Ct. at 1415. The Court expressly "d[id] not ultimately decide . . . whether the NLRB or MSPB falls within . . . a recognized [Presidential-removal] exception." *Id.* This court will not turn a preliminary determination (about agencies not at issue here) into a license to contravene Supreme Court precedent that has stood for almost a century.

*Irreparable harm to the movant.* On irreparable harm, Defendants' motion is woefully deficient. Instead of elucidating the precise injuries they will face, Defendants again rely on the Supreme Court's stay order in *Wilcox*. That reliance is misplaced. As Ms. Slaughter points out, the factual posture of both *Wilcox* and *Harris* differs significantly from that of this case. In both of those cases, the continued service of the allegedly removed commissioners "threatened to tip the balance of power of the NLRB . . . and the MSPB." ECF No. 56, at 4; *see* Appl. to Stay at 33, *Trump v. Wilcox*, No. 24A966 (Apr. 9, 2025) ("With Wilcox, the NLRB would have two

---

Commissioner—the very same position at issue in *Humphrey's Executor*—it must say so itself. *See Agostini v. Felton*, 521 U.S. 203, 238 (1997) (holding that a trial court must apply "binding precedent" "unless and until [the Supreme] Court reinterpret[s] [it]").

[4] Additionally, as this court explained in its memorandum opinion, the FTC's modern-day powers are either direct descendants of or logical outgrowths from its authority in 1935, when *Humphrey's Executor* was decided. *See* ECF No. 51, at 21-31.

Democratic members, one Republican member, and two vacancies. With Harris, the MSPB would have one Democratic member, one Republican member, and one vacancy."). Here, in contrast, the FTC currently has three Republican Commissioners—Mr. Ferguson, Ms. Holyoak, and Mark Meador—in addition to Ms. Slaughter, a Democrat. ECF No. 20-1 ¶¶ 23-24; ECF No. 32-2. Allowing Ms. Slaughter to continue serving in her lawful role does not dramatically upend the makeup of the Commission. Even if she may exercise certain powers unilaterally, *see* ECF No. 57, at 3, that is a far cry from altering the course of the agency. *See PHH Corp. v. Consumer Fin. Prot. Bureau*, 881 F.3d 75, 183 (D.C. Cir. 2018) (Kavanaugh, J., dissenting) ("The point is simple but profound. In a multi-member independent agency, no single commissioner or board member can *affirmatively* do much of anything."). And while Defendants contend that recusals may potentially eliminate one political party's advantage, *see* ECF No. 57, at 3, that remote possibility is not enough to meet the demanding standard of irreparable harm. This court will not permit Defendants to continue engaging in unlawful action on the mere basis of "some 'possibility of irreparable injury.'" *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoted source omitted).

*Balance of the equities.* On the balance of the equities, Defendants make no effort to contest the court's harm analysis as it pertains to Ms. Slaughter. *See generally* ECF No. 54. By "losing her position on the Commission, [she] lost the ability to influence federal decision-making on anticompetitive practices or take steps to protect American consumers from deceptive and exploitive businesses." ECF No. 51, at 36. This significantly differs from the typical loss-of-employment case and has serious repercussions beyond the immediate consequences for Ms. Slaughter. Permitting her removal further destroys the independence of the FTC and hinders its ability to carry out its Congressionally mandated task.

*Public interest.*  With respect to the public interest, Defendants—again hitching their wagon to *Wilcox*—argue that President Trump should be allowed to enforce his preferred policy agenda through unfettered removal power.  ECF No. 54, at 4.  Put differently, they complain that the court's order blocks them from illegally dismantling the independence of an agency that Congress deliberately shielded from executive overreach.  To entertain that complaint would make a mockery of the FTC, to say nothing of the separation of powers.  As always, the public maintains a heavy interest "in having governmental agencies abide by the federal laws that govern their existence and operations."  *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)).  No matter how Defendants try to spin it, this court cannot grant them relief without contravening that critical interest.  Because the court refuses to allow Defendants to continue breaking the law while this litigation proceeds, it is hereby **ORDERED** that Defendants' Motion to Stay, ECF No. 54, is **DENIED**.

    **SO ORDERED.**

                                                                                                           _____
                                                                                                           LOREN L. ALIKHAN
                                                                                                           United States District Judge

Date:   July 24, 2025